Bell et ux., Appellants, *v.* Beneficial Consumer Discount Company.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

petition to reconsider order quashing appeal denied November 14, 1974.

*Gerald W. Weaver,* with him *James F. Israel,* and *Bagley, Weaver & Sydor,* for appellants.

*J. Tomlinson Fort,* with him *Robert L. Potter,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION PER CURIAM, November 14, 1974:
Appeal quashed.

———

DISSENTING OPINION BY SPAETH, J., January 13, 1975:

The question presented by this appeal is whether an order dismissing a class action is interlocutory or final. The majority of the court has ordered the appeal quashed, and has denied a petition to reconsider its order, without explanatory opinion. I regret and respectfully dissent from this action. My reasons may be summarized as follows:

In certain cases, particularly consumer protection, securities, and civil rights cases, class actions are essential to the vindication of individual rights. In view of this fact, whether an order dismissing a class action is appealable is a question deserving appellate resolution. There is no such resolution in Pennsylvania (unless the unexplained order filed in the present case be so regarded). If the federal cases are consulted, I suggest that one will be persuaded at least to adopt the "death knell" doctrine; and if one looks further, and consults the most recent decisions of other State appellate courts, I suggest that one will conclude that the best rule is that any order dismissing a class action should be held final and therefore appealable. In the ensuing sections of this opinion, after a statement of the case, each of these reasons is considered in turn.

## Statement of the Case

Appellants, Edward and Marie Bell, brought an action on their own behalf and as representatives of a class

comprising present mortgagors and mortgagors who have borrowed money during the past twenty-one years from appellee, Beneficial Consumer Discount Company. The action is to collect the statutory fine provided for in the Act of May 28, 1715, 1 Sm. L. 94, §10, as amended, July 31, 1968, P. L. 866, No. 259, §1, 21 P.S. §682. The Act requires a mortgagee who has received full payment to satisfy the mortgage of record in the appropriate Recorder of Deeds Office. The effect of satisfaction is to discharge the mortgagor from the debt and to bar all future actions on the debt. If the mortgagee neglects to make the required satisfaction for forty-five days after a request by the mortgagor and the mortgagor tenders reasonable charges, the mortgagee must forfeit and pay to the mortgagor a sum not in excess of the mortgage money.

Appellants have averred: that on December 17, 1971, they negotiated a loan in the amount of $2,520 from Beneficial, secured by a mortgage that Beneficial filed without notice in the Recorder of Deeds Office of Allegheny County; that the mortgage debt was paid in full on April 24, 1972; but that the satisfaction was not recorded until December 27, 1972, which was a period well in excess of the mandatory forty-five days. In reply to interrogatories, Beneficial listed fifty-three mortgagors to whom it had made loans secured by mortgages, for which it had been fully reimbursed, but whose mortgages were not timely satisfied. Beneficial in turn filed preliminary objections claiming that the action was not properly a class action. Judge SILVESTRI sustained the objections without leave to amend. An appeal followed but on Beneficial's petition the appeal was quashed *per curiam*. Appellants filed a petition for reconsideration. On September 19, 1974, this petition was granted, WATKINS, P. J., PRICE and VAN DER VOORT, JJ., dissenting, but on November 14, 1974, after briefs and oral argument, the appeal was again quashed *per curiam*, with a

notation that a dissenting opinion would follow. This opinion is that dissent.

## The Importance of Class Actions

In deciding whether an order dismissing a class action is immediately appealable or whether review must await an appeal after adjudication on the merits of the individual action accompanying the class action, it is important that the purposes of the class action not be overlooked.

The historical purpose of class actions was to alleviate the burden on the court in cases where a claim was common to a large number of persons. *Greenfield v. Villager Industries, Inc.*, 483 F. 2d 824, 831 (1973). *See also* 25 Vanderbilt L. Rev. 911, 913 (1972). The class action also makes possible the effective assertion of many claims that otherwise might not be litigated. In our modern economic system a single harmful act may result in damages to a great many people. There is therefore a need for representative action to vindicate claims that taken individually are too small to justify legal action, but that taken as a group are of significant size. *Weeks v. Bareco Oil Co.*, 125 F. 2d 84, 90 (7th Cir. 1941). In consumer protection, securities, and civil rights cases, the class action is almost a necessity if problems of legal expense and the acquisition of competent counsel are to be overcome. *See* Note, Appealability of a Class Action Dismissed: The "Death Knell" Doctrine, 39 U. Chi. L. Rev. 403 (1972). Finally, the class action provides a needed supplement to the prosecutorial activities of government agencies. Since governmental manpower and facilities are not plentiful enough to ensure that all statutory violations will be detected, let alone tried, the private class action can serve as an added sanction and deterrent. *See J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) ; Kalven & Ros-

enfield, The Contemporary Function of the Class Suit, 8 U. Chi. L. Rev. 684 (1941).

Reflection upon these several purposes makes it evident that the class action is an important social device. It is against this background that the present case must be decided.

### The Absence of Appellate Authority

In general, the Superior Court has jurisdiction only over appeals from final orders, regardless of the nature of the controversy or the amount involved;[1] interlocutory orders are not appealable without special authorization.[2] In *Commonwealth v. Rucco*, 229 Pa. Superior Ct. 247, 249-250, 324 A. 2d 388, 389 (1974), we said: "Our appellate jurisdiction extends to *non-final* orders only where: (a) an appeal from an interlocutory order is authorized by law: Appellate Court Jurisdiction Act, *supra*, 17 P.S. §211.501(a); (b) a lower court has certified the issue involved in the interlocutory order as 'a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter . . .': *Id.*, §501(b), 17 P.S. §211.501(b); or, (c) the appellee has waived an objection to the jurisdiction of the court: [*Id.*], §503(a), 17 P.S. §211.503(a). Regarding the latter two instances of jurisdiction over appeals from interlocutory orders, we may, in our discretion refuse to exercise that jurisdiction."

The present appeal was not authorized by law, nor was it certified by the lower court, nor has appellee

---

[1] The Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, No. 223, art. III, §302, 17 P.S. §211.302.

[2] *Id.* art. V, §501, 17 P.S. §211.501; *Genro, Inc. v. International Chemical and Nuclear Corp.*, 224 Pa. Superior Ct. 60, 302 A. 2d 466 (1973); *Lewandowski v. General Tel. Co.*, 223 Pa. Superior Ct. 476, 302 A. 2d 478 (1973).

waived an objection to the jurisdiction of this court. It follows that if the lower court's order dismissing the class action is interlocutory, there can be no appeal. The question, therefore, is whether the order is interlocutory or final. There is no Pennsylvania appellate decision answering this question.

If the lower court had dismissed the class action and also the individual action, the order would clearly be final. The difficulty appears when, as in the present case, the court dismisses the class action but allows the individual action to continue. In *McMonagle v. Allstate Insurance Company*, 227 Pa. Superior Ct. 205, 324 A. 2d 414 (1974), this court did not consider the issue of appealability of such an order but proceeded directly to the merits.[3] The Pennsylvania Supreme Court has held that the converse order, one permitting the class action despite preliminary objections, is interlocutory and not immediately appealable. *Pincus v. Mutual Assurance Company*, 457 Pa. 94, 321 A. 2d 906 (1974); *Piltzer v. Independence F. S. & L. Assn*, 456 Pa. 402, 319 A. 2d 677 (1974). The court reasoned that such a permissive order could await final adjudication on the merits since the defendant was not "put out of court" and could therefore always raise the issue on appeal.

This reasoning is not applicable to the opposite order, as in the present case, where instead of being permitted, the class action is put out of court. First, the named plaintiff's individual action may be for so small an amount that the potential costs of the action will prove prohibitive. Consequently, although permitted, the individual action may as a practical matter be dis-

---

[3] "I express no opinion herein as to whether, upon particular facts, a class representative whose class action is terminated may file an appeal as from a final order." *McMonagle v. Allstate Insurance Company, supra* at 216, n.18, 324 A. 2d at 420, n.18 (1974) (CERCONE, J., opinion in support of the order *per curiam*).

continued, effectively leaving both the named plaintiff and the other members of the alleged class without remedy. Second, even if the named plaintiff's claim is large enough to induce continued prosecution of the individual action to a judgment on the merits, there is still no assurance that the dismissal of the class action will be appealed. If the named plaintiff prevails in his individual action he may be content with recovery of his own damages and not wish to incur the cost of appealing the dismissal of the class action.[4] Note, 17 Vill. L. Rev. 970 (1972). Attempts by other alleged class members to benefit from any precedential or collateral estoppel effect of the action may confront the same financial problems that as a practical matter made an individual action unattractive initially. Note, 39 U. Chi. L. Rev. 403 (1972). In sum, the considerations involved in deciding the appealability of an order dismissing a class action are quite different from those involved in deciding the appealability of a permissive order. Separate analysis is necessary.

## The Federal "Death Knell" Doctrine

The federal courts have for several years wrestled with the problem presented by this case. While their decisions are not binding, their experience is instructive. *See McMonagle v. Allstate Insurance Company, supra* (SPAETH, J., concurring).

Federal judges have started with the principle that class actions are like other civil actions and therefore an appeal is available only from final orders. *Walsh v. City of Detroit,* 412 F. 2d 226 (6th Cir. 1969); 28 U.S.C. §1291. In applying this principle, federal judges

---

[4] A plaintiff who has been successful in his individual action can appeal the order dismissing the class action since that order does not merge with the final decree. *Esplin v. Hirschi,* 402 F. 2d 94 (10th Cir. 1968) *cert. denied,* 394 U.S. 928 (1969).

have given "finality" a "practical rather than a technical construction." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). Thus they have evaluated the competing considerations underlying all questions of finality: "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other. [Footnote omitted.]" *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950). This has led certain federal courts to recognize that in some cases the initial denial of class status is critical, and that in such cases immediate review must be afforded, or it will be too late. Wright and Miller, Federal Practice and Procedure: Civil §1802. The leading case is *Eisen v. Carlisle & Jacquelin*, 370 F. 2d 119 (2d Cir. 1966), *cert. denied*, 386 U.S. 1035 (1967). An investor brought an action in his individual capacity and on behalf of all odd-lot securities dealers. On defendant's motion the district court dismissed the class action, leaving the investor with an individual claim of seventy dollars. The Second Circuit allowed an immediate appeal, recognizing that "no lawyer of competence is going to undertake this complex and costly case to recover $70 for Mr. Eisen . . . . Dismissal of the class action in the present case . . . will irreparably harm Eisen and all others similarly situated, for . . . it will for all practical purposes terminate the litigation." *Id.* at 120-121. Similarly, in *Green v. Wolf Corporation*, 406 F. 2d 291, 295 n.6 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969), a stock fraud case, the court allowed an immediate appeal from the district court's dismissal of the class action, finding that "Green obviously does not intend to press what will probably be an enormously complex and expensive action to recover less than $1,000."

When it is obvious that the named plaintiff will continue pressing his claim despite the dismissal of the class action, however, the Second Circuit has not hesi-

tated to distinguish *Eisen*. Thus in *Caceres v. International Air Transport Association*, 422 F. 2d 141, 144 (2d Cir. 1970), the court stated: "In those two cases [*Eisen* and *Green*], the average claim of each member of the class was quite small. Here it is not; . . . the average claim alleged is $150,000 per member . . . . [T]he claim by the representative plaintiff in Eisen was only $70 and in Green was less than $1,000. While the damage claims of the seven plaintiffs here are not yet specific, enough appears in the record to justify Judge Mansfield's conclusion that no claim was of 'such a low order of magnitude that it would be unfeasible or uneconomic for the claimant to seek redress.' 46 F.R.D. at 95. Therefore, we hold that the judge's order was not a final decision under 28 U.S.C. §1291." [Footnote omitted.] *See also Milberg v. Western Pacific R.R. Co.*, 443 F. 2d 1301 (2d Cir. 1971) ; *City of New York v. International Pipe and Ceramics Corp.*, 410 F. 2d 295 (2d Cir. 1969).

Hence, the Second Circuit has devised a rule that defines finality according to whether the remaining individual claim is too small to warrant the expense of further suit and the dismissal of the class action sounds the "death knell" for the whole litigation.

Not all the federal circuits have adopted the death knell doctrine, as may be seen by *Hackett v. General Host Corporation*, 455 F. 2d 618 (3d Cir. 1972), *cert. denied*, 407 U.S. 925 (1972). A consumer of bread in Philadelphia brought an antitrust action against Philadelphia bakers on behalf of all individual consumers who had purchased pan-baked bread from retail stores in the Philadelphia market area. Her individual claim was approximately nine dollars. The district court dismissed the class action, and the Third Circuit refused to apply the death knell doctrine and dismissed the appeal. The court first noted that in the federal system the doctrine "does not operate at all in those cases in

which federal jurisdiction depends upon jurisdictional amount." *Id.* at 622. "Since the court [Second Circuit] ... has in Korn v. Franchard Corp., *supra,* drawn the survivability line as low as $8,500, it is clear that in no case where a party with a $10,000 claim is before the court will the 'death knell' doctrine be applicable." *Id.* The court next noted that the doctrine is not needed to afford review in cases in which the refusal to grant class action status amounts to a denial of a preliminary injunction since 28 U.S.C. §1292(a) affords review there. Thus the court reasoned that the death knell doctrine applies only to a very limited group of cases, specifically, those cases in which a federal regulatory statute permits a suit for money damages regardless of jurisdictional amount. In regard to these cases, the court stated: "In every such instance other regulatory mechanisms are available to assert the public interest against the wrongdoer. If in some cases as Judge Rosenn suggests the individual claim often will be so small that neither private nor public lawyers think it should be litigated, then that decision of the legal marketplace may be the best reflection of a public consciousness that the time of the lawyers and of the court should best be spent elsewhere ...." *Id.* at 626.[5]

### What Rule Should Pennsylvania Adopt?

From the above discussion it appears that Pennsylvania courts have three alternatives in deciding the appealability of an order dismissing a class action. First, all such orders could be considered interlocutory and

---

[5] The Seventh Circuit has also rejected the death knell doctrine. *Thill Securities Corp. v. New York Stock Exchange,* 469 F. 2d 14 (7th Cir. 1972). The Fifth Circuit and the Ninth Circuit, however, have approved the doctrine. *Gosa v. Securities Investment Company,* 449 F. 2d 1330 (5th Cir. 1971) ; *Falk v. Dempsey-Tegeler & Co.,* 472 F. 2d 142 (9th Cir. 1972).

not appealable, as the Third Circuit has decided. Second, the death knell doctrine might be adopted. Third, it might be held, going further than any of the federal courts, that any order dismissing a class action, regardless of the amount of the remaining individual claim, is a final order and therefore appealable.

In deciding among these alternatives a good starting point is the federal rule that the requirement of finality should be decided in a practical rather than technical manner. *Cohen v. Beneficial Industrial Loan Corp., supra.* This rule is not only inherently persuasive but also represents the Pennsylvania rule.

In *Commonwealth v. Bosurgi,* 411 Pa. 56, 64, 190 A. 2d 304, 308 (1963), the Supreme Court held that an order suppressing evidence may be appealed if under the circumstances of the particular case the "practical effects" of the order give it "such an attribute of finality" as to make it proper to treat it as though it were a final order. Similarly, in *Commonwealth v. Elias,* 394 Pa. 639, 149 A. 2d 53 (1959), the court held that an order placing a convicted defendant on probation is appealable. The usual rule is that appeals may not be taken in criminal proceedings where judgment of sentence has not been passed. *Commonwealth v. Trunk,* 311 Pa. 555, 167 A. 333 (1933). However, as the court in *Elias* explained: "The harm that would be done to a defendant by denying him an appeal from a conviction when sentence is suspended and he is placed on probation is patent. In the instant case the defendant pleaded not guilty and has at all times stoutly maintained his innocence. If he were to comply with the conditions of the probation, which the trial court has imposed upon him, a judgment of sentence would never be entered against him and, in consequence, the errors in his trial, which he alleges, would go unreviewed and become moot. In reality, his compliance with the trial court's order would be tantamount to an admission of his guilt which

he actually denies." *Commonwealth v. Elias, supra* at 643, 149 A. 2d at 55. Because of these practical considerations the court would not quash the defendant's appeal.

Likewise in civil cases the requirement of finality has been decided in a practical manner. An example is *McCahill v. Roberts,* 421 Pa. 233, 219 A. 2d 306 (1966). The plaintiffs instituted an action in equity seeking to have their title to certain real estate judicially declared and to enjoin any sale of the real estate. The defendants filed a petition praying that the court enter an order permitting sale free of liens. The lower court entered an order permitting the sale and directing that the proceeds of the sale be held in escrow pending adjudication of the action. The plaintiffs immediately appealed from this order. A motion to quash was filed. The Supreme Court denied the motion and held: "The court's order is final in that it effectively puts the plaintiffs 'out of court' so far as their present claim is concerned . . . ." *Id.* at 236, 219 A. 2d at 308. Again, in *Brandywine Area Joint School Auth. v. Van-Cor, Inc.,* 426 Pa. 448, 233 A. 2d 240 (1967), the court looked beyond legal formalism to the realities of the situation and ruled that orders granting preliminary objections to additional party complaints are final and appealable. And in *Broido v. Kinneman,* 375 Pa. 568, 101 A. 2d 647 (1954), the court ruled final and appealable an order sustaining preliminary objections to a counterclaim, stating: "The order is appealable . . . . Its intendment and effect was to put the defendants out of court so far as their counterclaim was concerned. To that extent the order was final and would, no doubt, have impeded the defendants if unreversed before trial of the plaintiffs' claim. In so saying, we do not mean to suggest that a final judgment on the original issue raised by the complaint could not have been awaited by the defendants or that, upon appealing from such final

judgment, the action of the court below, in sustaining preliminary objections to the counterclaim, could not then have been assigned for error. But, obviously, such a course would not have afforded expeditious procedure for the ultimate disposition of the entire controversy . . . . In Riling v. Idell, 291 Pa. 472, 476, 140 A. 270, . . . we said that making the rule absolute [striking defendant's counterclaim] '. . . effected a dismissal of the counterclaim, which as to defendants' demand was definitive, and an appeal lies, for its effect was to finally end their right to further assert the cause of action alleged . . . .' " *Id.* at 569-570, 101 A. 2d at 648. *And see Commonwealth v. Orsatti, Inc.*, 448 Pa. 72, 292 A. 2d 313 (1972); *Hudock v. Donegal Mutual Insurance Co.*, 438 Pa. 272, 264 A. 2d 668 (1970); *Grota v. LaBoccetta*, 425 Pa. 620, 230 A. 2d 206 (1967); *Westbury Realty Corp. v. Lancaster Shopping Center, Inc.*, 396 Pa. 383, 152 A. 2d 669 (1959). It is therefore clear, both for criminal and civil cases, that in Pennsylvania, as in the federal system, the requirement of finality must be practically construed.

When one accepts this premise, the rationale underlying the death knell doctrine seems persuasive, particularly when one bears in mind the importance of class actions, as already discussed, in providing a remedy for group wrongs by affording relief to small claimants, and in deterring the commission of group injuries.[6] Since the individuals constituting a class are many times in no position to act for themselves, either because of their lack of knowledge or the small size of their claims, when a court of common pleas denies class status the practical effect will be to put the small claim litigant out of court permanently. So far as he is con-

---

[6] "[C]lass actions [are] . . . 'one of the few legal remedies the small claimant has against those who command the status quo.' " *Roemisch v. Mutual of Omaha Insurance Co.*, 39 Ohio St. 2d 119, 126, 314 N.E. 2d 386, 390 (1974) (O'NEILL, C. J., concurring).

cerned, the court's decision is final. The right to appeal ought therefore be held to exist. Otherwise the common pleas courts will have complete discretion in determining when the class action will be available to small claimants—the very persons for whom the action is most important. As Professor Wright has stated: "Whatever the shortcomings or conceptual weaknesses of the death knell rule, at least it affords a necessary and valuable safety valve that allows appeals to be taken in circumstances in which there otherwise would be no effective review of the class action issue. Moreover the reported decisions do not show any significant signs of abuse that might justify its abandonment." Wright and Miller, Federal Practice and Procedure, Civil §1802.[7]

For these reasons I believe that at the very least Pennsylvania should adopt the death knell doctrine.[8] The reasons proffered by the Third Circuit in *Hackett v. General Host Corporation, supra,* in rejecting this doctrine are not applicable to the states, for those very

---

[7] In addition appellate resolution of the issue would be beneficial because the ruling will significantly affect the conduct of the trial. *See Roemisch v. Mutual of Omaha Ins. Co., supra* (O'NEILL, C. J., concurring). As Judge ROSENN, dissenting in *Hackett v. General Host Corporation, supra* at 628, stated: "Furthermore, the district court's denial of the right to proceed as a class action has certainly affected the subsequent conduct of the litigation. Assuming that the suit will continue on the part of the appellant in her individual capacity, it is inconceivable that either the lawyers or the court will give a $9.00 suit the same consideration and attention due a class action involving hundreds of thousands of persons and many millions of dollars in potential damages. If nothing else, it would be a waste of judicial resources to allocate extensive time ... over this paltry sum."

[8] Arizona and Arkansas have adopted the death knell doctrine. *Reader v. Magma-Superior Copper Co.,* 108 Ariz. 186, 494 P. 2d 708 (1972) ; *Reynolds v. Bakem Credit Union,* 255 Ark. 322, 500 S.W. 2d 355 (1973). *See generally,* 54 A.L.R. 3d 595.

cases excluded from the federal courts because the claim does not meet the required $10,000 jurisdictional amount must by necessity be heard in the state courts. Thus, while the death knell doctrine will apply to only a limited number of cases in the federal courts, it will apply to a great number in the state courts. It is therefore even more critical, in light of the *Hackett* decision, that we adopt the doctrine.

The further question must be decided, however, whether Pennsylvania courts should limit themselves to the death knell doctrine. Application of the doctrine does create problems, and a better doctrine may be available.

One problem with the death knell doctrine occurs when the claims are neither so large as to ensure continuation of the action nor so small as to ensure its termination. This problem was highlighted in two companion cases reviewed by the Second Circuit. In *Korn v. Franchard Corporation*, 443 F. 2d 1301 (2d Cir. 1971), the appeal was allowed since the financial incentive ($386) was considered sufficiently small. However, in *Milberg v. Western Pacific R.R. Co.*, 443 F. 2d 1301, 1306-1307 (2d Cir. 1971), the appeal was dismissed: "While it is true that . . . Milberg's individual claim, according to her papers, is about $1,000, we refuse to look at her suit through blinders . . . . [P]laintiff's husband, who signed her complaint as attorney, has a claim for at least $7,500 . . . . Accordingly, we do not believe that the 'death knell' doctrine is properly applicable here."

The dividing line between a final and an interlocutory order may therefore be difficult to draw. The courts may in a particular case be forced to make an *ad hoc* determination according to such other factors as the subject matter of the dispute, the complexity of the litigation, and the financial resources of the plaintiff, quite apart from the factor of the amount in con-

troversy. Wright and Miller, *supra* at §1802. Such a determination may place the court in a difficult position. Thus Judge FRIENDLY in his concurring opinion in *Korn v. Franchard Corp., supra* at 1307, stated: "[D]espite the obvious appeal of the 'death-knell' doctrine, I am not sure it affords a rule that is truly workable or, indeed, is legally sustainable. If my fears should be realized, I might wish on some subsequent occasion to request that the court consider *en banc* whether we are not obliged to formulate a rule that will avoid the necessity of making such *ad hoc* judgments . . . ."

In my judgment we should profit from these remarks and from the experience of the federal courts generally, and, taking the opportunity offered by this appeal, should go beyond the death knell doctrine and hold that all orders dismissing class actions are final and therefore subject to immediate appellate review. In doing so we should be following the lead of several other states, specifically, California,[9] Ohio,[10] and Nevada.[11] Thereby we should achieve a number of advantages.

One advantage has already been discussed; it is that the danger of *ad hoc* determinations, implicit in the death knell doctrine, would be eliminated. Another advantage would be that the interests of the unnamed class members would be completely protected. The death knell doctrine affords some protection to the class, but not complete protection. Suppose the named plaintiff has a large enough individual claim so that he continues to litigate despite the order dismissing the class action. The death knell doctrine tends to assume that in the course of that litigation the named plaintiff will protect the interest of the unnamed class mem-

---

[9] *Daar v. Yellow Cab Co.,* 67 Cal. 2d 695, 433 P. 2d 732 (1967); *Hebbard v. Colgrove,* 28 Cal. App. 3d 1017, 105 Cal. Rptr. 172 (1973).

[10] *Roemisch v. Mutual of Omaha Insurance Co., supra.*

[11] *Johnson v. Travelers Ins. Co.,* 89 Nev. 467, 515 P. 2d 68 (1973).

bers; but he may not; having succeeded in enforcing his individual claim he may decline to appeal the order dismissing the class action, thereby leaving the class without a representative. This result may be avoided if one focuses not on the interest of the named plaintiff, as does the death knell doctrine, but on the interest of the unnamed class members, as does the rule for which I am here arguing.

This shift of focus is not a shift of reasoning. To the contrary, the same reasoning that compels acceptance of the death knell doctrine compels acceptance of a broader rule of appealability. As Judge HAYS stated in dissent in *City of New York v. International Pipe and Ceramics Corporation*, 410 F. 2d 295, 300-301 (2d Cir. 1969) : "Certain members of the proposed class [in this case] have claims that are not large enough to warrant their undertaking the expense of separate lawsuits. For those members the order determining that the action is not maintainable as a class action has terminated the litigation . . . . [A]s to those members of the class . . . the order below is precisely the 'death knell of the action . . .'" *And see Miles v. New Jersey Motors*, 32 Ohio App. 2d 350, 291 N.E. 2d 758 (1972) ; Note, Interlocutory Appeal from Orders Striking Class Action Allegations, 70 Colum. L. Rev. 1292 (1970).

Nor is the situation different if we suppose that the unnamed plaintiffs all have claims of sufficient size to proceed on their own in another suit. Certainly, such plaintiffs are not in the same situation as a "death knell named plaintiff" or "a small claim unnamed plaintiff," for they are not completely foreclosed from collecting their claims. The fact remains, however, that they are prevented from gaining relief in a particular suit; as to that suit, they are out of court.

To hold that all orders dismissing a class action are final and therefore immediately appealable would simply be another application of the principle, already dis-

cussed, that "finality" is to be defined in practical terms. The case of *Brandywine Area Joint School Authority v. VanCor, Inc., supra,* is particularly instructive. A school authority filed suit against a construction company and its surety. The two defendants attempted to join a number of other parties as additional defendants, among them an architect and a subcontractor, who filed preliminary objections to the complaints joining them; they contended that the attempted joinder constituted a misjoinder of causes of action. The lower court sustained the preliminary objections and dismissed the complaints. The first issue before the Supreme Court was whether that order was interlocutory or final. The court noted that an order overruling preliminary objections to a complaint against an additional defendant is interlocutory and not appealable, the underlying reasoning appearing to be that of *Pincus v. Mutual Assurance Company, supra* (where the lower court overruled preliminary objections to class status, and the Supreme Court held the order interlocutory), namely, that the parties are not put out of court and so can argue the point after determination of the merits. The court further noted, however, that the situation completely changes when the objections are sustained, since then the additional defendants are no longer parties to the litigation. To be sure, the plaintiff may be able to sue those parties separately, but not in the specific case at bar. The court therefore concluded that the order was final and appealable. In the court's words: "We conclude that while an order overruling preliminary objections to an additional party's complaint is interlocutory, an order granting such objections and dismissing the complaint is final and appealable. Although the plaintiff in the additional party's complaint may have a further cause of action against the defendant in the additional party's complaint subsequent to the resolution of the basic litigation, he is precluded in that basic

litigation from determining his rights vis-a-vis the additional defendant in that litigation. We shall, therefore, deny the motion to quash." *Brandywine Area Joint School Authority v. VanCor, Inc., supra* at 451, 233 A. 2d at 241-242. *Accord, Zakian v. Liljestrand,* 438 Pa. 249, 264 A. 2d 638 (1970); *American Metal Fabricators Company v. Goldman,* 227 Pa. Superior Ct. 284, 323 A. 2d 891 (1974).

This reasoning applies equally to cases involving orders dismissing a class action. Dismissal of the class action puts the passive members of the class out of court. As the argument that the order of dismissal is not final because the person might sue *in futuro* was rejected in *Brandywine,* so too it must be rejected here. It seems only logical that if an order denying joinder of additional parties is final, then an order denying class status, which is merely joinder of a great many persons,[12] must also be final.

I suspect that the majority has resisted this logic from apprehension that the court would be burdened with appeals. My own judgment is quite to the contrary. The purpose of the final judgment rule is to dispose of litigation by a single appeal,[13] to avoid the protraction of litigation by precluding piecemeal decisions,[14] and to prevent the undermining of lower court decisions. If appeals are not allowed from orders dismissing a class action, other well-situated members of the alleged class may bring their own class action or individual suits, thereby increasing the total number of suits and hence the number of appeals. Adopting the broad rule of appealability would stop these additional burdens from being placed on the judicial machinery by ensuring that the class action issue would be conclusive-

---

[12] As noted initially, one of the purposes of a class action is the consolidation of like claims into a single lawsuit.

[13] *Coleman v. Huffman,* 348 Pa. 580, 36 A. 2d 724 (1944).

[14] *Sullivan v. Philadelphia,* 378 Pa. 648, 107 A. 2d 854 (1954).

ly resolved in the first instance.[15] Note, 25 Vand. L. Rev. 911 (1972); Note, 39 U. Chi. L. Rev. 403, 418 (1972). *See Brandywine Area Joint School Authority v. VanCor, Inc.,* supra.

A corollary consideration is that by permitting immediate appeal an appellate court enables itself to play a larger role in shaping the class action procedures and remedies. Standards can be clearly defined to guide the lower courts in the exercise of their judgment. Note, U. Chi. L. Rev. 403 (1972). Since the United States Supreme Court has decided that in a class action brought under Fed. R. Civ. Pr. 23 individual claims may not be aggregated so as to reach the $10,000 amount required for diversity jurisdiction, *Snyder v. Harris,* 394 U.S. 332 (1969), it may be expected that state courts will have to decide an increasingly large number of class actions. It is therefore imperative that the procedures to be employed in class actions be uniform and clear.

## Conclusion

In sum, I believe that at the very least Pennsylvania should adopt the "death knell" doctrine. In addition, though, I believe that precedent, sound policy, and practical considerations all support the conclusion that orders dismissing a class action should be considered final orders and therefore appealable. The opinion of Justice SULLIVAN in *Daar v. Yellow Cab Company,* supra at 698-699, 433 P. 2d at 735-736, summarizes the arguments

---

[15] *Accord, Roemisch v. Mutual of Omaha Insurance Co.,* supra at 123, 314 N.E. 2d at 389: "In our opinion, the underlying purpose of R.C. 2505.02 [rule defining appealable orders] is to limit the absolute number of appeals taken. If a trial court determines that a class of plaintiffs is not permitted to function as such in a lawsuit, the number of actions filed will approach the magnitude of the number of class members [large claim class members], and possible appeals from those actions would far exceed any number of 'piecemeal' appeals arising from a unified class action."

very well: "In determining whether there has been a final judgment, sometimes a difficult question, we have long adhered to the rule 'that the question, as affecting the right of appeal, is not what the form of the order of judgment may be, but what is its legal effect' . . . It [the dismissal of the class action] determines the legal insufficiency of the complaint as a class suit and preserves for the plaintiff alone his cause of action for damages. In 'its legal effect' . . . the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff . . . . It has virtually demolished the action as a class action. If the propriety of such disposition could not now be reviewed, it can never be reviewed. The court has observed that 'it has long been the rule that in this state an order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectively as would any formal judgment.' . . . .

". . . We conclude that the order in the case at bench is in legal effect a final judgment from which an appeal lies . . . ."[16]

Accordingly, I should not have quashed this appeal, but should have proceeded to hear argument on the merits of the lower court's order dismissing the class action.[17]

HOFFMAN, J., joins in this opinion.

---

[16] Accord, Roemisch v. Mutual of Omaha Insurance Co., supra at 125, 314 N.E. 2d at 390: "It is beyond argument that an order that a class action is not so maintainable determines the class action and totally prevents a judgment thereon. Since the class action is terminated by such an order, the labeling of the order as 'interlocutory' is simply incorrect."

[17] Since the appeal was quashed, I have not considered the merits. Nothing said in this opinion should be read as intimating any judgment regarding the propriety of the present case as a class action.