348 A.2d 734

Edward J. BELL and Marie J. Bell, his wife, on behalf of
themselves and all others similarly situated,
Appellants,

v.

BENEFICIAL CONSUMER DISCOUNT
COMPANY, a corporation.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1975.

Decided Nov. 26, 1975.

226

James F. Israel, Gerald W. Weaver, Bagley, Weaver & Sydor, Pittsburgh, for appellants.

Robert L. Potter, J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The question presented is whether a pretrial order dismissing the class aspects of a suit, but allowing the case to proceed as an individual action, is an appealable final order. We hold that it is.

Appellants Edward and Marie Bell brought a class action pursuant to Pa.R.Civ.P. 2230 [1] against appellee Ben-

---

1. Pa.R.Civ.P. 2230 provides:
   "(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them

eficial Consumer Discount Company alleging that appellee failed to record the satisfaction of mortgages as required by statute.[2] Appellee filed preliminary objections. The trial court sustained the preliminary objections to the suit as a class action, but permitted the named plaintiffs to proceed in their individual capacities. An appeal from this order was taken to the Superior Court which granted appellee's motion to quash the appeal. On reconsideration, the court affirmed the order per curiam (Spaeth, J., filed a dissenting opinion in which Hoffman, J., joined).[3] We granted appellants' petition for allowance of appeal to decide whether an order dismissing a class action is final and appealable.[4]

With exceptions not relevant here[5] the Appellate Court Jurisdiction Act gives the appellate courts of the Commonwealth jurisdiction over appeals only from "fi-

who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto.

"(b) An action brought on behalf of a class shall not be dismissed, discontinued, or compromised nor shall a voluntary non-suit be entered therein without the approval of the court in which the action is pending."

**2.** Act of May 28, 1715, 1 Sm.L. 94, § 9, 21 P.S. § 681, as amended by Act of July 31, 1968, P.L. 866, § 1, 21 P.S. § 682 (Supp.1975).

**3.** *Bell v. Beneficial Consumer Discount Co.,* 231 Pa.Super. 1, 327 A.2d 874 (1974), 331 A.2d 902 (1975) (dissenting opinion).

**4.** See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp.1975).

In *Piltzer v. Independence Fed. Sav. & Loan Ass'n,* 456 Pa. 402, 319 A.2d 677 (1974), and in *Pincus v. Mutual Assurance Co.,* 457 Pa. 94, 321 A.2d 906 (1974), we held that an order permitting a suit to proceed as a class action is interlocutory and not appealable. Those cases present an issue substantially different from that presented here because of the striking difference in consequences which flow from each order. In those cases, unlike the case before us, the order of the trial court did not result in any party being put out of court.

**5.** The Appellate Court Jurisdiction Act specifically provides that appeals may be taken from interlocutory orders in certain circumstances. Id., art. V, § 501, 17 P.S. § 211.501 (Supp.1975).

228

nal orders." [6] We must decide whether orders denying class action status are "final" within the meaning of that Act.

Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme Court that a finding of finality must be the result of a practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).[7]

In resolving this question we are faced with three alternatives: (1) orders denying class status are final and

6. See id., art. II, § 202, 17 P.S. § 211.202 (Supp.1975); art. II, § 203, 17 P.S. § 211.203 (Supp.1975); art. III, § 302, 17 P.S. § 211.-302 (Supp.1975); art. IV, § 402, 17 P.S. § 211.402 (Supp.1975); art. IV, § 403, as amended, 17 P.S. § 211.403 (Supp.1975).

7. Whether a particular order in a given set of circumstances is "final," and therefore, appealable has long vexed the courts. In *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950), Justice Jackson stated:
   "Half a century ago this Court lamented, 'Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees. * * * The cases, it must be conceded, are not altogether harmonious.' (citation omitted). This lamentation is equally fitting to describe the intervening struggle of the courts; sometimes to devise a formula that will encompass all situations and at other times to take hardship cases out from under the rigidity of previous declarations; sometimes choosing one and sometimes another of the considerations that always compete in the question of appealability, the most important of which are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other."
   See also *Canter v. American Ins. Co.*, 28 U.S. 427, 429–30, 3 Pet. 307, 318, 7 L.Ed. 688 (1830). See generally Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. 539 (1932); Redish, The Pragmatic Approach To Appealability In The Federal Courts, 75 Col.L.Rev. 89 (1975). The finality determination is especially difficult when presented in the context of orders denying class action treatment. See, Note, Interlocutory Appeal From Orders Striking Class Action Allegations, 70 Col.L.Rev. 1292 (1970).

appealable; (2) such orders are interlocutory and not appealable; and (3) only those orders which effectively terminate the action are appealable (the "death knell" doctrine).

We believe that orders denying class action status possess sufficiently practical aspects of finality to make them appealable. When an action is instituted by a named individual on behalf of himself and a class, the members of the class are more properly characterized as parties to the action. A subsequent order of a trial court allowing an action to proceed as a class action is not a joinder of the parties not yet in the action. The class is in the action until properly excluded. An order dismissing the class aspects of a suit puts the class members out of court, is a final order for those parties and is therefore appealable. See *Alexander v. Mastercraft Construction Co., Inc.*, 455 Pa. 579, 317 A.2d 278 (1974); *Zakian v. Liljestrand*, 438 Pa. 249, 264 A.2d 638 (1970); *Brandywine Joint Area School Authority v. VanCor, Inc.*, 426 Pa. 448, 233 A.2d 240 (1967); *Rau v. Manko*, 341 Pa. 17, 17 A.2d 422 (1941). That the named plaintiffs can, in theory, individually pursue the action further, and the ousted members of the class can bring separate individual actions against the defendant does not alter the conclusion that the denial of class action status has put the ousted members of the class "out of court" for the purpose of this particular action.

This is the reasoning this Court relied on in *Lee v. Child Care Services*, 461 Pa. 641, 645 n. 1, 337 A.2d 586, 588 n. 1 (1975), where we stated:

"an order sustaining preliminary objections and dismissing the class aspects of [an] action is a final order even though individual aspects of the action may survive the order. The order effectively puts out of court those members of the class not parties to the individual action. . . . *DiAngeli v. Fitzgerald*, 433 Pa. 529, 252 A.2d 706 (1969)."

In *Brandywine Joint Area School Authority v. Van-Cor, Inc.*, 426 Pa. 448, 233 A.2d 240 (1967), we used the same rationale to support our decision that an order dismissing an additional party complaint was a final appealable order. Mr. Justice O'Brien stated for a unanimous Court:

> "We conclude that while an order overruling preliminary objections to an additional party complaint is interlocutory, an order granting such objections and dismissing the complaint is final and appealable. Although the plaintiff in the additional party complaint may have a further cause of action against the defendant in the additional party complaint subsequent to the resolution of the basic litigation, he is precluded in the basic litigation from determining his rights vis-a-vis the additional defendant in the litigation."

Id. at 51, 233 A.2d at 241. See *McCahill v. Roberts*, 421 Pa. 233, 236, 219 A.2d 306, 308 (1966) ; *Posternack v. American Casualty Company of Reading*, 421 Pa. 21, 23, 218 A.2d 350, 351 (1966); cf. *Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Co.*, 419 Pa. 170, 175–76, 213 A.2d 366, 368 (1965); *Broido v. Kinneman*, 375 Pa. 568, 101 A.2d 647 (1954).

Our determination that these orders are appealable avoids the harsh consequences attendant to a conclusion that orders which put parties out of court are unappealable.[8] Moreover, it is consistent with the policies to be served by Pa.R.Civ.P. 2230.

8. The decision that an action may not proceed as a class action frequently results in the termination of the litigation even though individual named plaintiffs could, in theory pursue the merits of their claims. Notwithstanding these harsh consequences, one state supreme court and intermediate appellate courts in two other states have held such orders to be interlocutory and not appealable. *Taylor v. Major Finance Co., Inc.*, 289 Ala. 458, 268 So.2d 738 (1972); *Levine v. Empire Sav. & Loan*, Colo.App., 527 P.2d 910 (1974); *Weaver v. Disabled Am. Veterans*, 490 S.W.2d 341 (Mo.App.1973).

Although our class action rule is somewhat different than its federal counterpart [9] the purposes to be served by these actions are identical. Professor Charles Alan Wright described this dual purpose:

" 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' Thus effective use of the class action device could serve the interests both of judicial administration and of justice." [10]

Refusing to allow appeals here would undermine the basic objectives of the class action rule. The judicial process would not achieve the benefits of having matters affecting large numbers of people litigated expeditiously in a single action. By allowing appeals from orders denying class status, individuals with small but meritorious claims will not be turned away without recourse where the action should be characterized as a class action but has not been so designated.

Appellee urges that to allow appeals from these orders will increase the workload in the already overburdened appellate courts. They remind us of the principles of ju-

---

**9.** In *McMonogle v. Allstate Ins. Co.*, 460 Pa. 159, 167, 331 A.2d 467, 471–72 (1975), we noted the relevance of federal practice under Fed.R.Civ.P. 23 in deciding questions arising under Pa.R.Civ. P. 2230. We found the authority of federal cases to be instructive though not necessarily compelling and quoted from the dissenting opinion of Judge Spaeth in the Superior Court: "Where we find the cases decided under the Federal rule persuasive . . . we may follow them, but if we do not find them persuasive, we are free to go in a different direction." 227 Pa. Super. 205, 237, 324 A.2d 414, 429 (1974) (Spaeth, J., dissenting). See also Delle Donne and Van Horn, Pennsylvania Class Actions: The Future in Light of Recent Restrictions on Federal Access, 78 Dick.L.Rev. 460 (1974).

**10.** Wright, Class Actions, 47 F.R.D. 169, 170 (1970), quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968).

dicial economy upon which the finality rule is based.[11] We are mindful of the need to avoid piecemeal review but we are convinced that our decision today is faithful to those principles.

After a decision by a trial court that an action is not properly maintainable as a class action, an early determination by an appellate court that a matter is, or is not, a proper class action avoids repetitious litigation.[12] Resolving the merits of a suit against a single defendant by a potentially large number of plaintiffs in one action "serve[s] the interests both of judicial administration and of justice." Moreover, this holding recognizes our basic duty to review those orders which end parties' participation in an action.

Despite the contention that allowing appeals from these orders might, perhaps, increase the number of cases for appellate review, we believe, as does Professor Wright, that "[i]f better justice can be obtained by broadening the scope of appellate review, then even congestion delay and expense are not too high a price to pay."[13] We do not perceive our appellate responsibilities as a variable function of our caseload.[14] Appellate review at this juncture is a judicial duty which we may not abdicate by simply saying that we do so to avoid "congestion, delay and expense."

11. See, e. g., *Canter v. American Ins. Co.*, 28 U.S. 427, 429–30, 3 Pet. 307, 318, 7 L.Ed. 688 (1830); Crick, *supra* note 7.

12. Wright, *supra* note 10, at 170.

13. Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 780 (1957). Cf. *Budget Laundry Co., v. Munter*, 450 Pa. 13, 24, 298 A.2d 55, 59–60 (1972) (Roberts, J., concurring, joined by Nix and Manderino, JJ.). In *Budget Laundry* we quoted Judge Jerome Frank, "The law is not a machine and the judges not machine tenders. . . . " Frank, Law and the Modern Mind, at 120.

14. The Appellate Court Jurisdiction Act delineates the breadth of our jurisdiction. We have previously found it is our duty under the Act to review cases which put parties out of court. We are not now at liberty to contract our jurisdiction simply because of the number of cases that may await appellate review.

Our holding also avoids the undesirable consequences that adoption of the "death knell" doctrine would bring.[15]

15. The "death knell" doctrine, first announced in *Eisen v. Carlisle & Jacquelin (Eisen I)*, 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), provides, "Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed." Much of the controversy in the federal circuit courts concerning the appealability of orders denying class actions focuses on the merits of the death knell doctrine. See *Eisen I, supra; Korn v. Franchard Corp.*, 443 F.2d 1301 (2d Cir. 1971); *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1962) (criticizing the doctrine); *Gosa v. Securities Inv. Co.*, 449 F.2d 1330 (5th Cir. 1971) (doctrine accepted but burden placed on plaintiff to establish factually that the "interlocutory ruling was efficiently converted by . . . circumstances . . . to an extinction of the very right to litigate"); but see, *Jones v. Diamond*, 519 F.2d 1090, (5th Cir. 1975) (without discussing death knell doctrine, appeal allowed from denial of class action where "prayer for an injunction . . . constitute[s] the heart of the relief," and "practical result of the order denying the proposed class must be to deny the requested broad injunction."); *King v. Kansas City So. Ind. Inc.*, 479 F.2d 1259 (7th Cir. 1973) (rejecting doctrine); *Hartman v. Scott*, 488 F.2d 1316 (8th Cir. 1973) (doctrine accepted in dicta but held not applicable to the case); *Falk v. Dempsey-Tegeler & Co., Inc.*, 472 F.2d 142 (9th Cir. 1972) ("the death knell doctrine exists but *its* application should be carefully limited."); *Ringsby Truck Lines, Inc. v. United States*, 490 F.2d 620 (10th Cir. 1973) (doctrine adopted); *Williams v. Mumford*, 167 U.S.App.D.C. 125, 511 F.2d 363 (1975) (accepting doctrine but finding it inapplicable to that case).

Supreme courts in the four states which have found such orders to be appealable have relied, at least in part, on the death knell concept. *Reader v. Magman-Superior Copper Co.*, 108 Ariz. 186, 494 P.2d 708 (1972); *Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (1967); *Rogelstad v. Farmers U. Grain Terminal Ass'n*, 224 N.W.2d 544 (N.D.1974); *Roemisch v. Mutual of Omaha Ins. Co.*, 39 Ohio St.2d 119, 314 N.E.2d 386 (1974).

By tying the appealability determination to the circumstances of the individual case, the death knell doctrine forces the appellate court to determine in each case the monetary point at which the litigant cannot be expected to continue the action and thus places an even heavier burden upon the appellate courts. This process combats uniformity and is antithetical to the appellate court's duty to provide standards which trial courts can effect generally. See *Korn v. Franchard Corp.*, 443 F.2d 1301, 1307 (2d Cir. 1971) (Friendly, J., concurring); see generally *Hackett v. General Host Corp.*, 455 F.2d 618, 627 (3d Cir. 1972) (Rosenn, J., dissenting).

Although that doctrine allows appeals from those orders which effectively terminate an action,[16] it forces appellate courts to make difficult and burdensome ad hoc factual determinations.[17] Courts which have adopted this approach have experienced great difficulty applying it.[18]

16. Insofar as the death knell doctrine allows review of orders which effectively terminate an action it does no more than conclude that an order which has, or will, put an end to the action is a final order and, as such, is reviewable. The doctrine adds nothing to the resolution of the finality question in cases in which it is clear that the action may continue, yet there has been an issue presented which appears to be ripe for appellate review.

17. Finality is determined vis-a-vis the particular litigant affected rather than as a function of the legal consequences of the trial court's order. Appellate courts are unsuited to make such factual determinations. Cf. Traynor, The Riddle of Harmless Error, at 20–21.

18. In the Second Circuit an individual claim of $386 qualifies for appeal under the death knell doctrine but one of $8500 does not. *Korn v. Franchard Corp., Milberg v. Western Pac. R. R. Co.,* 443 F.2d 1301 (2nd Cir. 1971). In the District of Columbia Circuit the death knell doctrine was accepted but held inapplicable in cases where a statute provides for recovery of attorney fees. *Williams v. Mumford,* 167 U.S.App.D.C. 125, 511 F.2d 363 (1975). This rule is of doubtful utility because of the many problems involved in determining when attorney fees should be awarded. See Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U.Pa.L.Rev. 636 (1974). Another difficulty with this approach is that the amount in controversy frequently bears little resemblance to the amount necessary to maintain the action. Nor does the monetary amount in controversy necessarily bear a direct relationship to the jurisprudential value of having a matter resolved, especially where equitable relief is sought. An obvious problem as the death knell line becomes more specifically delineated in each circuit is the propriety of courts looking to the financial circumstances of the individual litigant in determining whether the action cannot be expected to continue. As Judge Friendly stated in his concurring opinion in *Korn v. Franchard Corp.,* 443 F.2d 1301, 1307 (2d Cir. 1971):

"[D]espite the obvious appeal of the 'death-knell' doctrine, I am not sure it affords a rule that is truly workable or, indeed, is legally sustainable. If my fears should be realized, I might wish on some subsequent occasion to request that the court consider in banc whether we are not obliged to formulate a rule that will avoid the necessity of making such ad hoc judgments as have been required in these and other cases and also will afford equality of treatment as between plaintiffs and defendants."

See *Hackett v. General Host Corp.,* 455 F.2d 618 (3d Cir. 1972) and cases cited therein.

Allowing appeals from orders denying class action status brings a uniformity that the death knell doctrine does not. Ours is a rule that litigants, trial courts, and appellate courts can apply without the uncertainty which attends the death knell doctrine.

Any suggestion that allowing appeals from such orders will encourage class actions by unscrupulous individuals more anxious to blackmail defendants into settlement than to adjudicate the merits of the claim underestimates the legal and professional resources available to combat such abuses of the judicial process.[19] Allowing these appeals does not create new litigation and throw open once-closed doors of courts to frivolous law suits. As with any mixed finding of law and fact, we will give appropriate deference to the trial courts' determinations whether an action is properly maintainable as to class action. The effect of our holding here is simply that denials of class status will be reviewable before parties are excluded from litigating the merits of the claims.

Appellants have instituted an action on behalf of themselves and a class of which they aver they are members. The trial court decided that the action is not properly a class action, but may continue as an individual action. Because the trial court's order operates to remove parties from the litigation, the order which puts individuals out

---

**19.** See American Bar Association, Code of Professional Responsibility, Disciplinary Rules 2–103, 2–104 (adopted by the Supreme Court of Pennsylvania, February 27, 1974); Supreme Court Rule 17–5 ("The Disciplinary Board of the Supreme Court of Pennsylvania"). See also Restatement of Torts, § 674 (1938 ed.):

"One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if

(a) the proceedings are initiated

(i) without probable cause, and

(ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and

(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

of this particular action, is final and the merits of the appeal must be considered.

Order of the Superior Court quashing the appeal vacated. Case remanded to the Superior Court for proceedings consistent with this opinion.

JONES, C. J., took no part in the consideration or decision of this case.