489 A.2d 791

**Cynthia D. WILSON, Administratrix of the Estate of Keith L. Wilson, Deceased, and all others similarly situated**

v.

**STATE FARM MUTUAL INSURANCE COMPANY.**

**Appeal of Richard A. NEYHARD, Individually and as Administrator of the Estate of Christopher K. Neyhard, Deceased, and all others similarly situated.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 1984.

Filed Feb. 1, 1985.

Reargument Denied April 15, 1985.

Morris M. Shuster, Philadelphia, for appellant.

Neil J. Rovner, Harrisburg, for Wilson, appellee.

James J. McCabe, Jr., Philadelphia, for State Farm, appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

Before us are consolidated appeals from orders entered on June 9, 1982, denying Richard Neyhard's [hereinafter "appellant"] petition to intervene in the above-captioned class action and dismissing his objections to the proposed settlement therein. The appellant further challenges the order entered on June 10, 1982, approving the settlement as to subclass three.[1] All three orders were entered by the Honorable William W. Lipsitt of the Court of Common Pleas of Dauphin County.

On November 14, 1978, Cynthia Wilson, as administratrix of the estate of Keith Wilson, her deceased husband, [hereinafter "Wilson"] commenced an action against State Farm Mutual Insurance Company [hereinafter "State Farm"]

---

1. In addition to these three orders, the appellant's notice of appeal, filed on July 7, 1982, evidenced an intent to appeal a fourth order entered on June 25, 1982. However, no arguments relating to this order have been presented to us and therefore we will consider the issue waived.

seeking to recover postmortem work loss benefits due from State Farm as a result of the death of her husband in a motor vehicle accident. These benefits were sought pursuant to the Pennsylvania No-Fault Motor Vehicle Insurance Act.[2] On November 3, 1980, Wilson filed a class action complaint on behalf of herself and all previously employed Pennsylvania residents, insured by State Farm, who sustained fatal injuries in motor vehicle accidents within two years prior to the date of her husband's death.

By order of the Court of Common Pleas of Dauphin County, dated July 20, 1981, the following two subclasses were "conditionally" certified pursuant to Pa.R.Civ.P. 1702:

(1) When a deceased motor vehicle accident victim is survived solely by a spouse or solely by a spouse and minor children or solely by minor children, these survivors shall constitute a subclass.

(2) When a deceased motor vehicle accident victim is not survived by a spouse or by minor children, but is survived solely by other "survivors" delineated in § 103 of the Act[3] *and* these other "survivors" have been recognized by the insurance carrier as dependent, either by the carrier's having paid them "survivor's loss" benefits or otherwise, then these other survivors shall constitute a subclass.

*Wilson v. State Farm Mutual Insurance Company*, 103 Dauph.C.Rep. 25, 28 (1981). The court further stated, "Our organization of the class into these subclasses has been carefully scrutinized to sift out cases in which an initial inquiry on dependency is necessary." *Id* at ——. The court's reluctance to include cases in which a claimant's dependency was in question stemmed from a recognized lack of commonality of law and fact between these cases and those of the certified subclasses and from the uncer-

2. 40 P.S. § 1009.101 *et seq.*
3. [40 P.S. § 1009.103]

tainty of the law regarding the recoverability of post mortem work loss benefits by estates and nondependents.[4]

Following this certification, State Farm provided Wilson with a list of the names of individuals who State Farm believed fell within the two subclasses. The court approved a notice which was sent to all the individuals appearing on the list. The notice informed the recipients that they might be entitled to benefits if they were a spouse, dependent child, or dependent relative of an insured person killed in a motor vehicle accident within approximately a six (6) year period. Unfortunately, fifty-three (53) individuals mistakenly received identical notices despite the fact that those individuals were not within the enumerated categories. These fifty-three (53) recipients are best described as persons representing decedents who had no "survivors" as that term is defined in the Pennsylvania No-Fault Motor Vehicle Insurance Act.[5]

Meanwhile, the appellant instituted a separate class action in the Court of Common Pleas of Philadelphia County, *Neyhard v. State Farm Mutual Insurance Company*, March Term 1981, No. 608. The appellant is the father and administrator of the estate of Christopher Neyhard, an employed young man who, following a fatal automobile accident, left no dependent "survivors". The *Neyhard* complaint sought recovery of post mortem work loss benefits for all estates and/or survivors of decedents killed in motor vehicle accidents and insured by State Farm.[6] This action has been temporarily stayed.

Given the definition of the two certified subclasses, the appellant was patently not a member and it appeared that neither he nor the class of other nondependents he repre-

4. *But see Freeze v. Donegal Mutual Insurance Company,* 504 Pa. 218, 470 A.2d 958 (1983).

5. 40 P.S. § 1009.103.

6. State Farm faces more than eleven hundred (1,100) potential claims for work loss benefits on behalf of decedents who left no dependent "survivors". *Neyhard v. State Farm,* Defendant's Answers to Interrogatories, paragraph 5 and 6.

sented would be impacted by a resolution of the *Wilson* proceedings.

On February 11, 1982, Wilson filed a motion for partial summary judgment and, at about this time, the respective parties commenced settlement negotiations. Settlement terms were reached and were set forth in a stipulation of settlement dated May 17, 1982.

Under the terms of the stipulation of settlement, class one encompassed ninety-six (96) claims in which each class member was admittedly or presumptively dependent upon the decedent and no statute of limitations defense existed; class two encompassed one hundred and thirty-three (133) claims in which dependency was similarly admitted or presumed yet the statute of limitations may not have been properly tolled; class three was comprised solely of the fifty-three (53) "nondependent" claims. It was agreed that class one members would receive in settlement the full value of the applicable policy limits plus two years of interest at the statutory rate of 18% per year, totaling an individual estimated payment of $20,400.00. Class two members would receive one-half of their policy limits plus one and one-half years' interest at the 18% rate, totaling an individual estimated payment of $9,525.00. Class three members would receive individual payments of $6,000.00.

In accordance with Pa.R.Civ.P. 1714(c), the parties prepared a notice of proposed settlement which was submitted to, and approved by, the lower court. This notice included a description of the third new subclass and set forth the terms of each class' recovery. The members of all three classes received this notice.

A public hearing on the proposed settlement in *Wilson* was held on June 9, 1982. At this hearing, the appellant presented his petition to intervene and his objections to the proposed settlement. The lower court denied

the petition and dismissed the objections.[7] This timely appeal followed.[8]

7. On June 10, 1982, the court entered orders approving the overall settlement as fair, reasonable, and adequate. However, due to the possibility of the appellant's appeal, class three was severed from classes one and two for separate disposition. The appellant has, at no time, raised objections to the proceedings or settlements involving classes one and two.

8. The absence of a grant of the appellant's petition to intervene created confusion as to whether or not the appellant's objections were properly before the lower court. This is apparent in the record of the settlement hearing held on June 9, 1982. Counsel for the appellant requested as follows:

> MR. SHUSTER: Your Honor, please, just for clarification of the record, in light of your severance, I would request that Your Honor approve the petition for intervention since Your Honor has overruled the objections so that we have a standing to proceed.
>
> THE COURT: Does anybody have any objections to this intervention?
>
> MR. REATH: Your Honor, we do.
>
> . . . . .
>
> THE COURT: The real problem that we have is that we have a case, at least in my opinion, which is against you; however, I think that you should have a ruling on the petition to intervene so you can take an appeal on that case. [petition denied]

N.T. Settlement Hearing, June 9, 1982, at 38–39.

Having denied the appellant's petition to intervene, the appellant was without standing to raise objections to the proposed settlement. The lower court improperly entertained, and improperly ruled upon the apparent merits of, the appellant's objections. In analogous situations, courts have held:

> A third person cannot appear and file preliminary objections in an action to quiet title without first intervening and becoming a party. Only by intervention can the third person acquire standing. No stranger may be permitted to file an answer to a complaint unless he has first intervened in the action and became a party. An outsider cannot move to strike off or to open a judgment until he has first intervened. (Footnotes omitted).

Goodrich-Amram 2d § 2327:1.

If a petitioner for intervention has no other adequate means of asserting his rights, the denial of his/her petition is a final and appealable order. *See Richard Held Builders, Inc. v. A.G. Allebach, Inc.,* 266 Pa.Super. 101, 403 A.2d 113 (1979). Given the specific nature of the appellant's alleged status as representing the individual members of class three in *Wilson,* the denial of the appellant's petition to intervene in the *Wilson* action foreclosed the only means by which the appellant could assert his claim. This was an appealable order.

In light of the foregoing analysis, our review of the instant case will be confined to a determination of whether the lower court acted properly in denying the appellant's petition to intervene. We therefore do not reach the merits of the appellant's challenge to the June 9, 1982 dismissal of his objections to the proposed settlement or the

■ Pa.R.Civ.P. 2327 speaks directly to the issue of who may intervene in a civil action:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

The burden is on the petitioner to satisfy the requirements of Rule 2327. *See Startzell v. Montgomery Plaza, Inc.,* 96 Mont.C.Rep. 1 (1972), *aff'd per curiam,* 451 Pa. 585, 303 A.2d 824 (1973).

■ Additionally, we are mindful that the question of intervention is a matter within the sound discretion of the trial court. Unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review. *See Darlington v. Reilly,* 363 Pa. 72, 69 A.2d 84 (1949); *see also Marion Power Shovel Co. v. Fort Pitt Steel Casting Co.,* 285 Pa.Super. 45, 426 A.2d 696 (1981).

■ The appellant's brief addresses itself, without expressly so stating, to Rule 2327(4)'s allowance of intervention in cases where the petitioner possesses a legally enforceable interest, which will be affected by the determination of an action. The appellant argues that, having commenced a separate action on behalf of himself and a class of individuals allegedly inclusive of class three members in the *Wilson* action, he, as their representative, possesses a legal-

merits of the appellant's related challenge to the June 10, 1982 approval of the settlement as to subclass three.

ly enforceable interest compelling his intervention. In light of the particular facts before us, we agree.

The rule as to what constitutes a legally enforceable interest is unclear. *See Application of Biester,* 487 Pa. 438, 442 n. 2, 409 A.2d 848, 850–51 n. 2 (1979). The lower court found:

> Because Mr. Neyhard was not listed as a member of the plaintiffs' class and, in view of the fact that there has been no certification of a class which Neyhard purports to represent nor approval of his counsel as counsel for the class, this Court was compelled to deny the motion for intervention.

Lower Court Opinion at 5.

The lower court's emphasis upon the appellant's class' lack of certification was misplaced. Pa.R.Civ.P. 1701(a) states:

> "Class action" means any action brought by or against parties as representative of a class until the court by order refuses to certify it as such or revokes a prior certification under these rules.

In *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975), the supreme court observed:

> When an action is instituted by a named individual on behalf of himself and a class, the members of the class are more properly characterized as parties to the action. A subsequent order of a trial court allowing an action to proceed as a class action is not a joinder of the parties not yet in the action. The class is in the action until properly excluded.

*Id.,* 465 Pa. at 229, 348 A.2d at 736; *see also* Goodrich-Amram 2d § 1701:1 (Supp.1984).

In March of 1981, the appellant commenced his class action as a nondependent survivor of his insured son. The action was commenced to recover work loss benefits on behalf of himself and all others similarly situated. On July 20, 1981, two *Wilson* subclasses were provisionally [9] certified. Those two subclasses did not sweep within their

9. Pa.R.Civ.P. 1710(d)

ambit the "nondependents" who were ultimately included in the *Wilson* action. The fifty-three (53) individuals who later comprised the *Wilson* class three were, in March of 1981, "properly characterized as parties" to the *Neyhard* action. We find, therefore, that the appellant bears a duty to "fairly and adequately assert and protect the interests of the class" he represents, Pa.R.Civ.P. 1702(4), inclusive of the *Wilson* class three members. As a representative of the individual members of class three, the appellant's legally enforceable interest in the *Wilson* action was sufficient to satisfy Rule 2327(4).

"[T]he exact boundaries of the 'legally enforceable interest' limitation ... are not clear.

It owes its origin to the desire of the courts to prevent the curious and meddlesome from interfering with litigation not affecting their rights. The result is a flexible, although uncertain rule...."

*Pennsylvania Railroad Co. v. Hughart*, 422 Pa. 615, 222 A.2d 736, 738 (1966).

The appellant need not have been one of the individuals mistakenly included in the *Wilson* action to be possessed of a legally enforceable interest. Such an argument ignores the appellant's representational status. Further, the *Wilson* class three members were previously parties to the pre-certification *Neyhard* action represented by the appellant. The appellant was, by no means, simply "curious and meddlesome" in attempting to intervene in the *Wilson* action. Therefore, the lower court improperly denied the appellant's petition to intervene.[10]

10. Under Pa.R.Civ.P. 2329(2), a court may refuse an application for intervention despite the satisfaction of Rule 2327, if "the interest of the petitioner is already adequately represented." *See Straud v. Harper*, 66 Mont.C.Rep. 313, 81 Pa. D & C 233 (1950). Since it may be argued that Wilson was already adequately representing the interests of the appellant in the *Wilson* action, we feel it is necessary to redress this contention. We do so simply by making reference to the findings of the lower court in the opinion filed following that court's original class certification hearing, *Wilson v. State Farm Mutual Insurance Co.*, 103 Dauph.C.Rep. 25 (1981). At that time, the court refused to certify as a subclass the claims of survivors whose dependency was disputed. The court stated, "We are unable to conclude with certainty that the

586

Order of June 9, 1982, denying the appellant's petition to intervene, is reversed. Order of June 9, 1982, dismissing the appellant's objections to the proposed class action settlement, is not reached. Order of June 10, 1982 is not reached. Order of June 25, 1982 is not reached.

DEL SOLE, J., files dissenting opinion.

DEL SOLE, Judge, dissenting:

The majority holds that Appellant Neyhard's status as representative of an uncertified class similarly situated to subclass three members in the instant action *per se* confers on Neyhard a "legally enforceable interest" compelling intervention under Rule 2327(4) of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. 2327(4). While I would agree that Neyhard's class representative status would give him *standing* to petition for intervention on behalf of subclass three in the instant action, I do not believe that such status *per se* gives him a "legally enforceable interest" in the instant class action absent a showing that subclass three is not being adequately represented by the class representative in the instant case, Cynthia Wilson. Since I would require a showing of inadequate representation to establish a "legally enforceable interest", I respectfully dissent. In addition, while the trial court erroneously held that Neyhard had no standing to intervene, I would affirm its denial of Neyhard's petition to intervene based upon the trial court's overall finding that subclass three was adequately represented and that Neyhard's objections to the settlement were meritless.

There is no question that a trial court can permit intervention in a class action under Rule 1713(a)(3) of the Pennsylvania Rules of Civil Procedure. In addition, Rule 1713(a)(3) provides that intervention be allowed in accord-

plaintiff herein [Wilson] truly represents the interests of said 'other' survivors." *Id.* at 28.

ance with the rules governing intervention, specifically Rules 2326–2330 of the Pennsylvania Rules of Civil Procedure. Rule 2327 sets forth which persons may intervene:

### Rule 2327. Who May Intervene

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Pa.R.C.P. 2327. It is worthy to note that Appellant Neyhard has failed to cite in his brief the specific subsection of Rule 2327 under which his intervention would be permitted. A close reading of his brief reveals that his argument on intervention is merely conclusory. Despite this fact, the majority finds that Neyhard essentially argues that he possesses a "legally enforceable interest" allowing his intervention under subsection four of Rule 2327. While I do not agree that Neyhard has made a compelling appellate argument, I do agree that under the facts Neyhard could only intervene under subsection four of Rule 2327. However, as I initially noted, I disagree with the majority's interpretation of what constitutes a "legally enforceable interest" in the procedural context of the instant case.

The instant case poses, I believe, a unique procedural issue not yet addressed by any court of this Commonwealth nor any other court. In most cases, a person seeks to

intervene because his or her rights will be affected in some manner. In the class action setting, a person, already a named member of a class, seeks to intervene on grounds that the class representative is not adequately protecting his or her interests. However, in the instant case a person, Neyhard, not a member of a class in the instant action, seeks to intervene not on his behalf but on behalf of the persons comprising subclass three. The thrust of Neyhard's attempted intervention is that the interests of of subclass three are not being adequately protected by the class representative as evidenced by an alleged defective settlement. Indeed, if the record revealed that the interests of subclass three were being adequately protected then there would be no reason for the trial court to allow Neyhard's intervention.

The case law in this Commonwealth gives little guidance on issues concerning intervention in class actions. It would seem, however, that intervention should be liberally allowed assuming the requirements for intervention have been met. *See Goodrich-Amram* § 1713(a):4. *See also McMonagle v. Allstate Ins. Co.*, 227 Pa.Super. 205, 212–214, 324 A.2d 414, 419–420 (Opinion of Cercone, J., in Support of the Order Per Curiam) (1974). However, intervention has been denied on a finding that the petitioner's interest were already adequately represented by the class representative. *See Goodrich-Amram* § 1713(a):4. As previously noted, this is a case of someone other than a named class member attempting to intervene on behalf of named class members. This changes the focus of the intervention analysis. Normally, the focus is on the proposed intervenor and whether his or her interest is being adequately protected by the named class representative. In the instant case, the focus is not on the intervenor, Neyhard, but on the class members for whom intervention is sought and whether their interests are already adequately represented. Assuming a person has standing to intervene because he or she is similarly situated to the class members on whose behalf intervention is

sought, only upon a showing that the interests of the class members are not already adequately represented by the named class representative would there arise in the person a "legally enforceable interest" permitting intervention under Rule 2327(4). In the instant case, Neyhard had standing to intervene because he was similarly situated to the members of the subclass three, but the record reveals a failure to establish that the interests of subclass three were not already adequately protected by the named class representative, Cynthia Wilson.

A review of the record reveals that the persons who comprise subclass three were mistakenly included in the instant action. Nevertheless, a settlement was reached was included a provision for payment of $6,000 to each member of subclass three not opting out of the settlement. The record also reveals that notice of the settlement was given to as many subclass three members as possible and that some decided to accept the settlement. The only objections to the settlement were raised by Neyhard which the trial court dismissed as meritless and in which finding I concur. In addition, the trial court explicitly found that the settlement was vigorously negotiated and was fair in light of serious doubts that subclass three members would prevail at trial and the further expenses of litigation given the unlikelihood of success. While the trial court did not explicitly frame its findings in terms of adequate representation it is apparent that the trial court found that subclass three was well served by the settlement despite the difference in interest between subclass three and other two classes. My review of the record convinces me that the interests of subclass three were adequately represented by the named class representative, Cynthia Wilson, and thus no "legally enforceable interest" arose in Neyhard to permit his intervention under Rule 2327(4). Accordingly, I would affirm the trial court's denial of Neyhard's petition to intervene.