637 A.2d 1020

**RESOLUTION TRUST CORPORATION as Conservator for Atlantic Financial Savings, F.A., Appellee,**

v.

**Cecil J. BUCHANAN and Lela N. Buchanan, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1993.

Filed March 1, 1994.

James A. Swetz, Stroudsburg, for appellants.

Mark J. Conway, Blue Bell, for appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the May 26, 1993, order of the Court of Common Pleas of Monroe County granting the Appellee/Plaintiff's [1] motion for summary judgment [2] and de-

1. The Resolution Trust Corporation (RTC), the Plaintiff herein, was appointed receiver for Atlantic Financial Federal (AFF), a thrift institution declared insolvent by the Director of the Office of Thrift Supervision, Department of Treasury. AFF was succeeded in interest by Atlantic Financial Savings (AFS), a newly chartered federal savings association, which acquired certain assets and accepted the transfer of certain liabilities of AFF.

Following its appointment as receiver, RTS entered into a Purchase and Assumption Agreement with AFS and took possession of all of the assets of AFF in accordance with applicable law.

2. A praecipe to enter judgment in favor of the Appellee/Plaintiff and against the Appellants/Defendants for the sum of $1,077,456.00 plus fees and expenses was filed June 4, 1993.

nying the Appellants/Defendants'[3] motion for summary judgment. We affirm.

As this Court has recently stated in *Jones v. General Motors Corp.*, 428 Pa.Super. 544, 631 A.2d 665 (1993):

> ... a motion for summary judgment is properly granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). In reviewing a motion for summary judgment, the trial court "must examine the record in the light most favorable to the non-moving party." [Citation omitted]

Applying this standard of review, the relevant facts are as follows: On February 25, 1989, the Appellants executed a promissory note for a $1,000,000.00 loan extended to them by Atlantic First Federal (AFF). The loan was secured by a first lien mortgage on lots 8, 9, and 10 situated in Monroe County, as evidenced by a mortgage executed by the Appellants on the same day as the promissory note.

With AFF"s insolvency on January 11, 1990, Resolution Trust Corporation (RTC) was appointed as receiver for AFF, which became a newly-chartered federal savings association known as Atlantic Financial Savings (AFS).

*On November 14, 1991, RTC entered a judgment by confession* (amounting to $1,077,456.59, plus future costs) for the Appellants' default on October 7, 1991. Thereafter, *on January 22, 1993, RTC filed a complaint to conform confessed judgment* pursuant to 41 P.S. § 407 (hereinafter "Act 6") and Pa.R.Civ.P. 2981 et seq. Further, on March 29, 1993, RTC filed a motion for summary judgment alleging that there were

---

3. The Appellants/Defendants consist of Cecil J. and Lela N. Buchanan.

no issues of material fact; it had provided the Appellants with proper notice per 35 P.S. § 1680.401c et seq. (hereinafter "Act 91"); and it should be granted summary judgment as a matter of law.

In response, the Appellants filed a cross-motion for summary judgment averring that RTC had failed to comply with the requirements of Act 91, in that it neither provided notice prior to confessing judgment nor did it designate any consumer credit counseling agencies in Monroe County.

After a review of the pleadings, the court entered an order granting RTC's motion for summary judgment but denied the Appellants' motion seeking similar relief. This appeal followed and raises two issues for our consideration: the court erred in entering judgment in favor of the Plaintiff "where it failed to comply with the notice requirements of Act 91 prior to confessing judgment originally and where the notice sent subsequently fail[ed] to contain a counseling agency within the confines of [Monroe] ... county where the mortgagor[s] reside[d]." See Appellants' Brief at 5.

More particularly, as to Act 91 notice being delayed until after confessing judgment, the Appellants argued that the failure to comply with such a condition precedent rendered the court without "jurisdiction" to act upon RTC's motion for summary judgment; a fortiori, argued the Appellants, the judgment entered on November 14, 1991, was a nullity. Id. at 9 & n. 1. We find the argument to be disingenuous.

Our Supreme Court, in Bennett v. Seave, 520 Pa. 431, 554 A.2d 886 (1989), was confronted with a class action suit by the Appellees/Bennett and Porter against the Appellant/Mid–Penn Consumer Discount Co. for alleged violations of the notice requirements of Act 6[4] and Act 91, the latter of which was enacted in 1983 to establish an emergency mortgage assis-

---

4. Act 6 was promulgated to delay mortgage foreclosure for those individuals needing credit counseling to extricate themselves from their financial shortcomings and begin the road back to financial solvency with payment to their mortgagee. Act 91, on the other hand, avails state funding to those who qualify for the same during a financial crunch brought on by means beyond the control of the mortgagor.

tance program to prevent the widespread mortgage fore-closures on residential properties which had resulted from default caused by circumstances beyond the owners' control. *Id.*

With regard to the Appellees, their loans had been secured by notes and mortgages on the debtors' personalty and residential property. In the case of Bennett, for example, the Appellant filed a complaint seeking recovery of the amount due from "all assets owned by the debtor other than the residential property." As for Porter, the property which secured his debt was described "as household contents and . . . his residential property."

When Porter defaulted, a notice of intention to sue on the note was identical to that sent to Bennett. No evidence appeared in the record indicating that other legal proceedings had been initiated to collect the outstanding balance due on Porter's loan.

The trial court held that the notices required under Act 6 and Act 91 were unnecessary to collect on personal consumer loans by assumpsit actions on a note which did not involve mortgage foreclosure. This Court reversed, holding that failure to comply with the notice requirements under either Acts would preclude Mid–Penn from instituting action against *any* assets of the debtors. Our Supreme Court disagreed and reinstated the trial court's initial ruling. In the course of doing so, the Court wrote:

> . . . Act 6 and Act 91 require that notice must be given before any legal action may be commenced to recover under a "mortgage obligation", the crucial inquiry becomes what is encompassed within the definition of a mortgage obligation.
>
> Act 6 defines a "residential mortgage" to include:
>
> an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, *evidenced by a security document and secured by a lien upon real property located within the Common-wealth* containing two or fewer residential units or on which two or fewer residential units are to be constructed

and shall include such an obligation on a residential condominium unit.

41 P.S. § 101 (Emphasis added). Act 91 defines the term "mortgage" for purposes of the act as "... any obligation *evidenced by a security document and secured by a lien upon real property located within the Commonwealth* including, but not limited to, a deed of trust and land sale agreement." 35 P.S. § 1680.401(c)(a) (Emphasis added).

While it is clear from the comparable definitions of mortgage that the mortgages executed by the Appellees are within the scope of the acts, it does not necessarily follow that the notice provisions are applicable to legal actions brought under a promissory note executed contemporaneously with the mortgage documents when recovery is limited to a separate security interest in personalty. The debts assumed by the Appellees were secured both by granting a security interest in household goods and by executing a mortgage on residential property.

*    *    *    *    *    *

Although we agree that "obligation" refers to the debt, we must reject the Superior Court's analysis that every security interest created in connection with a consumer loan transaction is a "mortgage obligation" for purposes of the Act simply because real property is pledged along with additional collateral to secure the underlying debt. This analysis collapses the two separate transactions—the one which pledges the personalty as security and the one which creates a lien upon real property. *The mortgage documents executed by the Appellees are obligations "evidenced by a security document and secured by a lien upon real property." The notes which were also executed evidence the debt, but do not ·of themselves create a lien upon real property.*

*The purpose behind the notice provisions of both acts [6 and 91] was not to require a lender to advise the borrower of an intention to accelerate the maturity of a residential mortgage obligation when the legal action initiated is not based upon the mortgage document. The comprehensive*

*statutory scheme demonstrates an extensive program designed to avoid mortgage foreclosures.*

\* \* \* \* \* \*

A borrower may pledge multiple forms of collateral to secure a debt—the protections afforded by Act 6 and Act 91 are statutorily limited to security extended by the execution of a residential mortgage.

520 Pa. at 441–43, 554 A.2d at 891–92 (Emphasis added in part; footnote omitted).

With *Bennett* in mind, we observe that the Appellants at bar executed a "Demand Promissory Note" evidencing a $1,000,-000.00 Loan from RTC's predecessor containing a provision granting it a "security interest/lien" not only by way of any other security agreement or document granting AFF any rights in any of the Appellants' property for the purpose of securing the liabilities, but "in all property of such" Appellants which at any time AFF shall have in its possession. Said lien and security interest were independent of any right of set-off which AFF might have.

Additionally, the Note provided for a:

**WARRANT OF ATTORNEY: RECOGNIZING THAT [THE APPELLANTS ARE] WAIVING CERTAIN IMPORTANT RIGHTS, INCLUDING THE RIGHT OF PREJUDGMENT NOTICE AND HEARING, EACH MAKER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT OR AT ANY TIME THEREAFTER, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST SUCH MAKER FOR SUCH SUMS AS ARE DUE ON THE LIABILITIES....**

As further security for the loan, AFF obtained a mortgage of even date executed by the Appellants, which reads in relevant part:

In consideration of the indebtedness evidenced by the obligation and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged

by Mortgagor, and as security for payment to Mortgagee of the principal amount of the obligation with interest thereon, and all other sums provided for in the obligation and in this Mortgage and in the Loan Documents hereinafter referred to, according to their respective terms and conditions, and for the performance of the agreements, conditions, covenants, provisions and stipulations contained herein and therein, and in all other agreements and instruments made and given by Mortgagor to Mortgagee in connection with the indebtedness evidenced by the obligation . . ., Mortgagor has granted, conveyed, bargained, sold, aliened, enfeoffed, released, confirmed and mortgaged, and by these presents does hereby grant, convey, bargain, sell, alien, enfeoff, release, confirm and mortgage unto Mortgagee, its successors and assigns, all that certain real estate described in Exhibit "A" attached hereto (the "mortgaged real estate"), which is hereby made a part hereof and incorporated herein by reference.

TOGETHER WITH all Mortgagor's right, title and interest, now owned or hereafter acquired, in:

(i) Any and all buildings . . . improvements, hereditaments and appurtenances mortgaged and intended so to be, or in any way appertaining thereto. . . .

All of the above-mentioned real estate, buildings, improvements, fixtures, equipment, tenements, hereditaments and appurtenances . . . and other property interests are collectively referred to herein as the "Mortgaged Premises."

Attached as Exhibit "A" to the mortgage were metes and bounds descriptions of Lots 8, 9 and 10, none of which listed the erection of any building/dwelling thereon.

We make mention of this given the fact that the Appellants refer in their pleadings to the Appellee presently seeking satisfaction of the amount due and owing under the confession of judgment by execution upon their personal home. Other than such self-serving statement by the Appellants, we have no indication of record that the Appellee is attempting to execute on the Appellants' home to satisfy the debt.

In fact, the record discloses that the Appellee is no further along the procedural course toward ultimate execution on its judgment than its attempt to conform the confessed judgment pursuant to Pa.R.Civ.P. 2981 et seq. More specifically, we would observe that Act 91's "notice" requirement, to be sent in advance of "commenc[ing] any legal action ... to recover under [any] ... obligation" by a mortgagee, shall not be applicable if:

(1) The property securing the mortgage is not the principal residence of the mortgagor.

(2) The property securing the mortgage is not a one or two-family owner-occupied residence.

(3) The mortgage is insured by the Federal Housing Administration under Title II of the National Housing Act (12 U.S.C. §§ 1707–1715z–18).

35 P.S. § 1680.401c(a)(1)–(3).

Viewed in light of the preceding, there is no indication in the Defendants' pleadings or supporting briefs that the subject property is the place upon which rests their principal residence or that they are the owners-occupants of the property upon which is erected a one or two-family residence.[5] *Id.*; *Hawkins v. Pennsylvania Housing Finance Agency,* 141 Pa. Cmwlth. 283, 595 A.2d 712, 714 (1991); *Harris Savings Association v. Eshleman,* 40 D. & C.3d 480, 486 (Lancaster Cty., 1984).

Accordingly, because the Defendants did not satisfy the preliminary eligibility requirements of Act 91, they were not entitled to receive the protections of Act 91. *Id.*

Therefore, for the reasons herein stated, we affirm the order appealed.

Order affirmed.[6]

---

**5.** In reading Act 91, it is evident that its purpose is to provide "private homes and rental units" to low and moderate income families in need of *housing.* See 35 P.S. §§ 1680.102, 1680.102a (Emphasis added). Such does not appear to be the case with the Appellants.

**6.** To the extent that the Appellants assail the court's denial of their cross-motion for summary judgment, issued under the same order

which granted the Appellee's motion for summary judgment, we find that it is appealable since it ends the litigation by placing the Appellants "out of court". See *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975).

However, inasmuch as the dual appeals are inextricably intertwined factually and legally, disposition in favor of the Appellee necessitates a denial of the Appellants' appeal in the absence of a genuine issue of material fact and the Appellee's entitlement to relief as a matter of law. See *Jones v. General Motors Corp.*, 428 Pa.Super. 544, 631 A.2d 665 (1993).