626 A.2d 169

**Michael E. REIF, Appellant,**

v.

**Elaine M. REIF, Appellee.**

Superior Court of Pennsylvania.

Submitted April 5, 1993.

Filed June 1, 1993.

John A. Boccabella, Reading, for appellant.

William R. Bernhart, Reading, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is Michael Reif's [Father's] appeal from the Honorable Arthur E. Grim's order directing Father to pay $82.00 per week plus an amount to be determined by the Domestic Relations Section of the Berks County Court of Common Pleas for the college expenses incurred by his daughter, Jennifer ["Daughter"]. The order was the result of the trial court's determination that Daughter was not estranged from Father. We agree with the trial court's conclusion that Father and Daughter are not "estranged" so as to relieve Father of his obligation to pay post-high school educational support and affirm its order.

Father and Elaine Reif ["Mother"] were married with two children, Daughter and Michael. Although the couple separated in 1981 and reconciled for a brief period in 1987, the couple finally split in 1988. At the time, Daughter was

"turning seventeen." N.T. 5/24/92 p. 5. Michael was several years older.[1] Although Daughter lived with Mother while her parents were separated, Father testified that he maintained a steady relationship with her and visited her regularly. *Id.* at 14. Difficulty arose between Father and Daughter sometime in 1989, when Father attempted to explain to Daughter that he and Mother were going to divorce. Daughter testified that Father "made it pretty clear that he had a new family now and he really didn't want any part of his own family." *Id.* at 8. After several conciliatory phone calls between Father and Daughter in 1989, Father made no attempts to contact Daughter. Daughter graduated from high school in 1991 and entered East Stroudsburg University that fall. Father was not invited to Daughter's graduation and did not participate in Daughter's choice to continue her education. Father testified that he did not want to "harass" Daughter by making repeated attempts to reconcile when he knew that she would not accept his efforts.

Meanwhile, Father and Mother consented to a divorce and on March 7, 1991, the couple entered into a post-nuptial agreement ["the agreement"] which settled all property matters and claims against one another. Most pertinently, the parties contemplated Father's potential obligation to pay for Daughter's college expenses:

11. **SUPPORT**

[Father] will contribute to the post high-school education of [Daughter] in accordance with his obligation under the law of Pennsylvania and [Mother] will sign a [sic] necessary financial documents.

The agreement, ¶ 11.

As we noted above, Daughter enrolled as a full-time student at East Stroudsburg University. She attended the university in the fall of 1991 and spring of 1992, incurring $5,676.00 in tuition and room and board costs and approximately $642 for books and related expenses. All of these college expenses

---

1. The only testimony regarding Michael's age was given by Daughter, who claimed she thought Michael was twenty-six years old at the time of the hearing on the estrangement issue, in June 1992.

18

were incurred by Mother. On May 21, 1992, Mother filed a petition pursuant to 23 Pa.S.A. §§ 401 and 401.1, seeking enforcement of paragraph 11 of the agreement and reimbursement of Daughter's college expenses.[2] Father answered the petition claiming that he was relieved of any obligation under the contract because he was estranged from his daughter. On June 24, 1992, the trial court heard testimony, related above, regarding Father and Daughter's relationship. On August 24, 1991, the trial court concluded that Father could not avail himself of the estrangement defense and was not relieved of his contractual obligation to pay Daughter's educational support. The trial court also entered the following order:

AND NOW, August 24, 1992, after consideration of the record, hearing and argument, it is hereby ordered as follows:

1. The Domestic Relations Section is directed to determine the additional amount of support in excess of $82.00 per week which respondent/father owes his daughter, Jennifer L. Reif, for college related expenses at the conference on August 25, 1992, scheduled in the case of Jennifer Reif vs. Michael E. Reif docketed to 92–0226–00.

Trial court order 8/24/92. It is from this order that Father appeals.

Father raises two substantive arguments: (1) he claims that the trial court erred in finding that he and his daughter were not estranged; and (2) that since the recent Supreme Court case of *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), holds that Pennsylvania law does not recognize a parental obligation for post-high school support, paragraph 11 of his agreement, incorporating Pennsylvania law, should be interpreted to relieve his obligation to provide Daughter with educational support while she attends college. We disagree with both of these arguments.

---

**2.** Mother also sought reimbursement for Daughter's medical expenses which Father agreed to pay under the agreement. The trial court granted the petition in this regard, and Father does not challenge this aspect of the trial court's order. Thus, all further discussion regarding the events below will be limited to the educational support issue.

■ We note initially that we are troubled with several aspects of the trial court's order of 8/24/92. First, although the order specifies that Father is responsible for paying $82.00 per week plus an amount to be determined by the Domestic Relations Board, the record contains no indication of how the trial court arrived at this figure. Second, the trial court refers to a hearing in front of the Domestic Relations Board on August 25, 1992, regarding a separate action involving (presumably) the identical issues as those involved here. The record, however, contains no further indication regarding the nature (or even the existence) of this separate action, or whether the conference took place. Third, the order leaves father's obligation beyond $82.00 per week unresolved pending the outcome of the Domestic Relations Board Conference. In this respect, the order appears to be interlocutory, since it lacks any finality regarding the amount of Father's obligation and the effect that Father's estrangement claim has on the amount of the obligation.[3]

Since this case involves child support, however, we must resolve these peculiarities in such a way that will promote just and expedient resolution. Pennsylvania law consistently has held that while it abhors the "piecemeal litigation" resulting from interlocutory appeals of orders granting special relief in divorce cases, *see Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985), the "final order" requirement for appealability deserves more flexibility in cases involving child support:

[W]hile the adults can generally look to other sources of revenue to maintain themselves during litigation, the child is totally dependent on its parents for support; its needs are immediate and continuing, and in particular, any deficiency is likely to be recovered. We believe the child support Order requires review to protect the interests of the child,

3. Compounding our lack of guidance in this matter is the appellee's decision to not file a brief. Although appellees cannot be punished in any way for not filing briefs in cases which are submitted to this Court without argument, *see* Pa.R.A.P. Rule 2188, Pa.C.S.A. (appellee may be excluded from oral argument if he or she does not file a brief), this omission certainly does not help a party's cause in cases that are either close or potentially complicated.

to avoid hardship, and to insure uninterrupted maintenance by its parents.

*Ritter v. Ritter,* 359 Pa.Super. 12, 17, 518 A.2d 319, 322 (1986).

In *Ritter,* this Court distinguished between orders of spousal and child support in the same trial court order, holding that while an order setting spousal support is interlocutory, an order setting child support is final and appealable. *Id. See, Griffin v. Griffin,* 384 Pa.Super. 210, 558 A.2d 86 (1989) (Although preliminary orders in a divorce action are interlocutory, particular order implicated child support, and was therefore final and appealable). The *Griffin* court added that "[i]n ascertaining whether an order is final and immediately appealable, we must consider not only the order's technical effect, but also its practical ramifications." *Id.* at 219, 558 A.2d at 91 (citing *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975)).

Although this case involves Father's duty to provide post-high school educational support, which has, at best, been described as a "qualified duty," *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854 (1989), *alloc. denied,* 524 Pa. 598, 568 A.2d 1248 (1989), expeditious consideration of the trial court order is warranted in light of Daughter's immediate concerns. The trial court order concludes that father assumed a contractual obligation to provide support, a conclusion which Father disputes. If we were to hold that the order was interlocutory because the amount of the obligation is undetermined, a remand and further hearings in front of the Domestic Relations Board might well be superfluous if we agree with Father. On the other hand, if we disagree with Father, and hold that he did assume an obligation, Father, Daughter, and Mother will know, beyond dispute, where they should look for financial assistance and further proceedings will have more meaning than they would if Father's duty is left unresolved. Again, it is important to note that Father is not contending that he is unable to pay an amount determined by the court, but only disputes whether he is obligated in the first place. Thus, insofar as the order conclusively determines that Father is under a contractual obligation to contribute toward Daugh-

ter's education, the order is final and prompt review of Father's claims is appropriate.

We will address Father's second claim first, because it concerns the very heart of a parent's duty, under the law of this Commonwealth, to provide post-education support for his or her children. Paragraph 11 of the post-nuptial agreement requires Father to provide post-high school support "in accordance with his obligation under the laws of Pennsylvania." Thus, Father contends that since the recent Supreme Court case of *Blue v. Blue, supra,* proclaims that there is no parental duty to provide support beyond high school, *Id.,* 532 Pa. at 529, 616 A.2d at 633, he is accordingly under no contractual obligation to provide Daughter with support. We disagree.

It is well established that a party may contractually assume a duty to support his or her child's post-secondary education. *Emrick v. Emrick,* 445 Pa. 428, 284 A.2d 682 (1971). This is so, despite *Blue*'s holding that there is no legal duty to provide post-secondary educational support. *Trunkwalter v. Trunkwalter,* 421 Pa.Super. 308, 617 A.2d 1308 (1992). Since Father's support obligation in this case is defined in the post-nuptial agreement, his duty is contractual, not legal. *Schmucker v. Hanna,* 377 Pa.Super. 301, 547 A.2d 379 (1988), *alloc. denied,* 522 Pa. 577, 559 A.2d 38 (1989). We must apply the law of contracts to interpret father's duty and, of course, the intent of the parties will control. *Id.* at 303–306, 547 A.2d at 380–381.

We do not dispute Father's contention that the agreement incorporates Pennsylvania law to define Father's support obligation. Father's interpretation of *Blue*'s impact on Pennsylvania support law, however, overlooks a rather important paragraph in the agreement:

16. *LAW OF PENNSYLVANIA APPLICABLE*

This agreement shall be construed in accordance with the Laws of the Commonwealth of Pennsylvania which are in effect as of the date of the the execution of this Agreement.

Agreement, ¶ 16. This provision, read together with paragraph 11, unambiguously demonstrates the parties' intention

that Father's duty to provide support for Daughter's post-secondary education would be defined by Pennsylvania law as it existed on March 9, 1991, the day Father and Mother executed the post-nuptial agreement. On that date, the state of Pennsylvania law regarding a parent's duty to provide support after his children have graduated from high school is best found in *Milne v. Milne, supra.*

In *Milne,* this Court, *en banc,* reworked a previous body of caselaw which imposed a parental duty of post-high school support when the child demonstrated an ability and desire to pursue a college education and the parents were able to contribute to the education without undue hardship. *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963). The *Milne* court found that the *Ulmer* two-pronged inquiry was inflexible,[4] and expanded the relevant inquiry to include an evaluation of the relationship between the non-custodial parent and the child seeking support. The court concluded that where the child has willfully estranged him or herself from the non-custodial parent, that parent is under no duty to provide post-secondary educational support. *Id.,* 383 Pa.Super. at 199–200, 556 A.2d at 866. Thus, *Milne* requires a court to look at the familial circumstances, including the child's ability and desire to attend college, the parents' ability to contribute to the education without undue hardship, and whether the child has willfully estranged himself from the non-custodial parent to determine whether the parent has a duty to contribute to the college education of his or her child. *Id.; Bedford v. Bedford,* 386 Pa.Super. 349, 563 A.2d 102 (1989). Since *Milne* was the law at the time Father assumed his obligation to provide support

---

**4.** *Milne* recognized that the *Ulmer* two-prong test was already being modified to allow courts flexibility to consider other equitable factors in deciding to impose a legal duty of post-secondary support. Such factors included the college age child's personal earnings and the reasonableness of the college education viewed in light of familial standards of living. *Milne, supra,* 383 Pa.Super. at 183–185, 556 A.2d at 858 (and collected cases). For our purposes, it is sufficient to identify *Milne*'s contribution to the existing law as providing the "estrangement defense."

under the agreement, it provides the standard by which Father's duty should be determined.

Conversely, *Blue* was decided nearly a year after Father and Mother entered into their post-nuptial agreement. Applying *Blue* would therefore frustrate their intent. Paragraph 16 incorporates Pennsylvania law as it existed at the time of the agreement's execution. This embodies the more general notion that a contract incorporates the laws that exist at the time the contract is made. *First National Bank of Pennsylvania v. Flanagan,* 515 Pa. 263, 528 A.2d 134 (1987); *DePaul v. Kauffmann,* 441 Pa. 386, 272 A.2d 500 (1971); *see also* 17 C.J.S. Contracts § 330 ("a contract will be construed according to the law of the state, as interpreted by its courts, at the time the contract was made, and not in accordance with subsequent decisions to the contrary"). The notion behind this general principle is that a change in the law should not change the substantive obligations of parties under contract. *Flanagan, supra,* 515 Pa. at 268–270, 528 A.2d at 137. *Blue* was not a part of Pennsylvania jurisprudence at the time the parties entered into their agreement contemplating Daughter's support, and we will not apply it to this case.

Father also argues that the trial court erred in finding the estrangement defense inapplicable to relieve his obligation.[5] He claims that the lower court incorrectly interpreted *Bedford v. Bedford, supra.* His argument rests on the assertion that the trial judge's "timetable" approach to whether Father made a good-faith effort to maintain a relationship with daughter was incorrect. In addition, Father argues that the trial court's inquiry into the Daughter's motivation for not speaking

**5.** Mother and Daughter argued below that Father was not entitled to claim estrangement as relieving or lessening his duty to contribute to Daughter's college education. They relied on *Cook v. Covey,* 415 Pa.Super. 353, 609 A.2d 560 (1992), which held that estrangement is only a consideration in cases of judicially imposed support obligations, not cases where a parent assumed the obligation contractually. We agree with the trial court that unlike the contract in *Cook,* where the husband "agreed to pay college expenses ... at a college agreed upon by husband," Father's contractual support obligation in this case was defined by the law of Pennsylvania at the time the contract was executed. This necessarily includes an inquiry into Father's claim that the parties were estranged. *Milne, supra.*

with her parent, rather than the simple fact that Daughter did not speak with Father, was erroneous. We disagree.

Estrangement can operate to relieve or lessen a parent's duty to pay support toward a college education when that parent has made a good-faith and concerted effort to establish and develop a relationship with his or her child, and the child has unquestionably and willfully rejected the parent's outstretched hand. *Bedford v. Bedford,* 386 Pa.Super. 349, 357, 563 A.2d 102, 106 (1989). Whether estrangement has been proven is a factual determination that must be made by the trial court, and will not be disturbed absent an abuse of discretion. *O'Connell v. O'Connell,* 409 Pa.Super. 25, 597 A.2d 643 (1991). In *Bedford, supra,* the college-age son and his father had not spoken with each other since the son was eleven years old. Father stopped visiting his son after he concluded that his son's negative attitude made visits "intolerable." *Id.,* 386 Pa.Super. at 357–358, 563 A.2d at 106. We found that both parties bore partial blame for the estrangement between them; the father for initially leaving the son, and the son for allowing the estrangement to continue. We therefore held that

> because [son] cannot be faulted for unilaterally initiating the estrangement, this does not provide a basis for denying [son] support from his father for his college education. To conclude otherwise would be to reward father for neglecting his son. This we firmly refuse to do.

*Id.*

Likewise, in this case, the record indicates that both parties are not blameless for the estrangement. Father made relatively few attempts over a two-year period—he called Daughter several times and sent a Christmas gift—to rekindle a relationship with his daughter. Although Daughter sent the gifts back and never made an effort to contact Father, Father made no further effort to contact Daughter. The trial court evaluated Daughter's motivation for not contacting father, describing it as hurt and confusion. This inquiry, contrary to what Father argues, is absolutely vital to determine if the

child unilaterally severed the relationship. The trial court evaluated Daughter's testimony and concluded, as did the court in *Bedford,* that Daughter was not solely responsible for initiating the estrangement, and decided that Father could not be completely relieved of his obligation to contribute to Daughter's education. This is not an abuse of discretion.[6]

The order is affirmed.

Dissenting statement by WIEAND, J.

WIEAND, Judge, dissenting:

Although I must agree with my colleagues that the order entered by the trial court is unusual and in some respects unsupportable by the record,[1] it seems clear to me that the order does not constitute a final determination of the dispute between the parties. For this reason I would quash the instant appeal. If the appeal is not quashed, appellant will most certainly have the right to a second review after the amount of the order has been determined finally. To permit piecemeal appeals does not serve the efficient use of judicial resources and, therefore, should not be allowed. See: *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985).

---

**6.** Father also contends that the court erred by considering court-ordered reconciliation attempts between Father and Daughter in concluding that the parties were not estranged. Since we have already concluded that Father's obligation is not relieved because he is partly responsible for the "estrangement" from its inception, any reconciliatory conduct is of no moment. In any event, the counselling sessions were not mandatory, and we find it laudable that the court made conciliatory avenues available to Father and Daughter.

**1.** Although it has not been made an issue in this case, in my judgment it is improper for a court to direct the Domestic Relations Officer to determine the amount of a support order where adverse proceedings have been heard by the court.