Albert STEWART and Elizabeth
Stewart, Appellees,

v.

OWENS–CORNING FIBERGLAS
et al., Appellant.

**Appeal of John Crane, Inc.**

Superior Court of Pennsylvania.

Argued April 23, 2002.
Filed Aug. 13, 2002.

David F. Abernethy, Philadelphia, for appellant.

* Retired Justice assigned to the Superior Court.

1. Appellees Albert Stewart and Elizabeth Stewart are husband and wife. References to Appellee, singularly, are to Albert Stewart.

Michael A. Cancelliere, Philadelphia, for appellees.

Before DEL SOLE, P.J., MONTEMURO,* and BECK, JJ.

DEL SOLE, P.J.

¶ 1 This is appeal is from the judgment and order entered following a jury verdict in favor of Appellees[1] in an action they commenced following Appellee's diagnoses with asbestosis and restrictive lung disease. The order at issue sanctioned Appellant based upon its refusal to settle under Philadelphia Local Rule *212.12. We affirm the jury's verdict, but reverse the order entering sanctions.

¶ 2 This case was tried in a reverse-bifurcated fashion with Phase I proceeding along with others consolidated for trial against a number of defendants, including Appellant. At the end of the first phase of trial, the jury awarded damages to Appellee in the amount of $390,100 and $111,600 to his wife.[2] Phase II of the trial concerned liability. Appellee offered his own testimony, that of a co-worker and a medical expert, Dr. Stoloff. The jury returned a verdict in favor of Appellees and against Appellant.

¶ 3 Appellant claims that Appellees produced insufficient evidence that Appellant's product caused his injuries. As a subpart to this claim Appellant asserts that Appellees' expert lacked the requisite qualifications and that his opinion had no basis in fact and therefore should not have been admitted. The trial court in

2. The trial court notes in its opinion that there were ten remaining defendants and because all of the products were found to be substantial contributing factors, Appellant's "ultimate share was $50,170." Trial Court Opinion, 11/28/01, at 2.

its opinion recounts the facts established at trial. These include evidence of Appellee's exposure to asbestos products at work, including Appellant's product. The trial court also recalled that Appellant offered testimony to show that Appellee does not suffer from any asbestos related condition and that Appellant's product releases little or no asbestos fiber sufficient to create a health hazard. As noted by the trial court, the jury was free to accept or reject this evidence. It is the jury's function to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939 (1994).

¶ 4 We further agree with the trial court's reasoning which causes it to reject Appellant's claim that Appellee's expert was not sufficiently qualified to offer an opinion on the medical effect of the release of asbestos dust from Appellant's packing material. The trial court in its opinion dated November 28, 2001, details the expert's qualifications. For the reasons expressed therein we find Appellant's claim without merit.

¶ 5 We also agree that Appellee's expert was properly permitted to testify that Appellant's product released sufficient levels of asbestos fibers to cause Appellee's condition. As this Court stated in *Junge v. Garlock, Inc.*, 427 Pa.Super. 592, 629 A.2d 1027, 1029 (1993):

> Our case law includes no requirement that a plaintiff in an asbestos case prove through an industrial hygienist, or any other kind of opinion witness, *how many asbestos fibers are contained in the dust emissions from a particular asbestos containing product.* Instead, in order to make out a prima facie case, it is well established that the plaintiff must present evidence that he inhaled asbestos fibers shed by the specific manufacturer's product.

(emphasis in original). Thus, we reject Appellant's claim that Appellees failed to prove their case in that their expert had no knowledge regarding the concentration of fibers released by Appellant's product or the type or size of these fibers. As noted by the trial court:

> Here, Dr. Stoloff had the experience and expertise to testify that asbestosis results from the cumulative effect of asbestos exposure, and every breath of asbestos fibers contributes to the disease. This can be supplemented by the testimony of the plaintiff and co-workers to testify as to the amount of asbestos materials used and their recollection of how much of a specific manufacturer's product was on the work site.

Trial Court Opinion, 11/28/01, at 6.

¶ 6 Appellant next contends that it is entitled to a new trial because the trial court read nonresponsive and misleading testimony to the jury when it posed a question during deliberations. After the jury had retired to deliberate it came back with questions. The trial court read from the jury's note:

> 'Judge Klein, we are unable to decide a verdict without our questions being answered.
>
> 1. When the packing rope was removed from the valve, was it still in the form of a rope, or had it disintegrated to dust, and how was it removed?'
>
> Two is crossed out.
>
> 3. Were any of the rope-like packing products used during testing the same rope packing products used by the Budd Company during Mr. Stewart's employment?'

N.T., 12/19/00, at 487.[3]

A discussion then took place off the record after which the jury returned to the courtroom. The court repeated the jury's first question in its own words and stated:

The testimony was from Mr. Gaskins, we have been able to try to recreate it. Let me check and see if he talked about removal. Here's the testimony.

*Id.* at 488. The court then went on to read to the jury from Mr. Gaskins' testimony, and interjected, "they did not talk about removal there." *Id.* at 489. A discussion was again held off the record, following which the court read more of Mr. Gaskins' testimony. The court concluded: "That basically is the testimony I found dealing with the dust that came from the rope the gaskets." *Id.* at 492. The court subsequently addressed the second jury question. Thereafter, counsel for Appellant objected to the court's response to the first question arguing that the testimony read back to the jury was not responsive in that the plaintiff put forth no evidence that anyone observed the valve packing being removed. The trial court responded: "They heard the evidence. They will be able to tell that themselves." *Id.* at 495.

¶ 7 Appellant disputes the court's ruling, claiming the reading of the unresponsive testimony misled the jury. Appellant suggests that because the jury had indicated by its question that testimony regarding the removal from the valves was critical to its decision, it must be presumed that the reading of the unresponsive testimony caused the jury to return a liability verdict against Appellant.

¶ 8 When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request. *Commonwealth v. Gladden*, 445 Pa.Super. 434, 665 A.2d 1201 (1995). In this case the court read back testimony and added a comment that the testimony it read did not cover removal. The court read some additional testimony and advised the jury that that was basically all the testimony regarding dust and the rope. The jury was free to interpret from a reading of this testimony whether their specific question was ever addressed at trial. Notably, the jury did not ask for further clarification. We perceive no abuse of discretion in the court's actions. We disagree with Appellant's assessment that the court's actions unduly prejudiced its case.

¶ 9 In its third issue Appellant asserts it was entitled to a remittitur. It claims that Appellee suffered from "negligible impairment," that his injuries were not severe, "and were manifested almost entirely by subjective evidence." Appellant's Brief, at 22. We find this claim without merit and based upon our review we conclude that the award in this case was not excessive. The trial court in its opinion has analyzed this issue applying relevant law to the specific facts of this case. We affirm the court's ruling on this point based upon the reasoning provided by the trial court in its opinion.

---

**3.** We note Appellant has failed to include in the record filed with this court the transcripts of the trial proceedings. For purposes of this appeal we have relied on the reproduced record in reviewing the testimony and evidence offered at trial. We caution Appellant that it remains the appellant's responsibility to ensure that a complete record is produced for appeal. *Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993), *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994). Inclusion in the reproduced record is not an acceptable substitute for the original certified record. *Id.* The failure of the appellant to ensure that the original record certified for appeal contains sufficient information to conduct a proper review may constitute a waiver of the issues sought to be examined. *Id.*

¶ 10 Appellant next challenges the imposition of sanctions against it under Philadelphia Local Rule *212.2. This rule provides in pertinent part:

**Rule *212.2 Sanctions for Failure to Settle**

(B) In any action tried by a jury in which the sole relief sought is money damages, the trial judge on his or her own motion or on motion of any party may direct the attorneys for the parties to appear for a settlement conference.

\*  \*  \*  \*  \*  \*

(D) If the trial judge determines that he or she can fairly evaluate the settlement value of the case, he or she shall recommend a settlement amount to the attorneys for the parties, and the recommendation with the parties' agreement or non-agreement with it shall be recorded and made a part of the case file.

(E) If prior to the verdict the defendant has agreed to pay the amount recommended by the trial judge but the plaintiff has not agreed to accept that amount and the final judgment is at least twenty (20) percent less than the trial judge's recommendation ... then the trial judge may, within ten (10) days after the final judgment, schedule a hearing to determine whether or not any sanctions shall be ordered against the party who had refused to settle.

\*  \*  \*  \*  \*  \*

■ (I) In the event the trial judge determines that sanctions shall be ordered against the party who refused to settle, he or she may order the party to pay to the County of Philadelphia all or part of the reasonable costs incurred as a result of the party's refusal to settle. . . .

Appellant argues that this rule, which permits a trial judge in certain circumstances to order a non-settling party to pay the costs of conducting a trial, is invalid. It suggests that the Philadelphia Court of Common Pleas was without authority to adopt the rule, and that this rule violates the due process and equal protection clauses of the Pennsylvania and United States Constitutions. As an alternative, Appellant suggests the rule was inappropriately applied in this case. Because we conclude the Court of Common Pleas of Philadelphia County was without authority to create this rule, we need not discuss Appellant's other challenges to its validity and application.

¶ 11 This Court has had occasion, albeit in *dicta*, to question the authority of the Philadelphia Court of Common Pleas to create and enforce this particular rule. In *Treu v. Harleysville Ins. Co.*, 443 Pa.Super. 567, 662 A.2d 1106, 1109 (1995), we stated:

[W]e have serious reservations regarding a rule that gives a trial judge the power to enforce an order that includes monetary sanctions for failure to accept a settlement. . . . Article 5, § 10(c) of the Pennsylvania Constitution gives our [S]upreme [C]ourt exclusive power to establish rules of procedure for all state courts. While the [S]upreme [C]ourt can delegate certain supervisory and administrative powers under 42 Pa.C.S. § 1721, we have found nothing to support an assertion that it has granted to the common pleas courts the type of power which is manifest in Rule *212.2. We also believe that there is a potential for misuse or abuse of power in a rule that permits a trial court to impose sanctions where the money flows directly back to that authority. Further, Rule *212.2 purports to supplement Pa.R.C.P. 212. However, a review of both rules reveals that they are not related in any way. Thus, we would seriously doubt whether the trial court has the authority to seek to enforce such a rule.

¶ 12 While 42 Pa.C.S.A. § 1721 permits the Supreme Court to delegate certain su-

pervisory and administrative powers, 42 Pa.C.S.A. § 323 directs that every court shall have only the power to make rules and orders which are not prescribed by the Supreme Court's general rules. Section 1726 states that the Supreme Court is the authority authorized to prescribe by general rules the standards governing the imposition and taxation of costs. 42 Pa. C.S.A. § 1726; 42 Pa.C.S.A. § 102 (defining governing authority as the Supreme Court). It further directs that "all system and related personnel shall be bound by such general rules." 42 Pa.C.S.A. § 1726(A). In speaking with regard to the imposition of actual costs, Section 1726 directs that the Supreme Court be guided by consideration that "[t]he imposition of actual costs or a multiple thereof may be used as a penalty for violation of general rules or rules of court." 42 Pa.C.S.A. § 1726(A)(3). We can find no authority granted to the Philadelphia Court of Common Pleas to create a rule which in certain circumstances, unrelated to a penalty for violation of a particular rule, adds to the taxable cost of the case.

¶ 13 We recognize that the courts of this Commonwealth have a legitimate interest in resolving cases in a timely fashion, and may seek to require parties to participate in settlement discussions as an aid to that end. Nevertheless, there is no authority authorized by our Supreme Court to direct the payment of costs of conducting a trial to a litigant who refuses to settle. Accordingly we agree with Appellant's contention that Philadelphia Local Rule 212.2 is invalid and we reverse the order that imposed a sanction upon Appellant.

¶ 14 Judgment affirmed. Order reversed. Jurisdiction relinquished.