J-A09034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.K.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| K.M.P. | : | |
| | : | |
| Appellant | : | No. 1007 MDA 2016 |

Appeal from the Order May 17, 2016
In the Court of Common Pleas of York County
Civil Division at No(s):  2008-FC-000584-15

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 20, 2017**

Appellant, K.M.P. ("Husband"), appeals from the order entered in the York County Court of Common Pleas, which granted the petition of Appellee, S.K.P. ("Wife"), for special relief, contempt, and enforcement.  We affirm in part, vacate in part, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows.  The parties were married in February 1992, and are the parents of three children.  Wife initiated divorce proceedings in 2008.  On March 25, 2009, the parties entered into an Agreement for Order of Support ("2009 Support Agreement").  The 2009 Support Agreement provides in relevant part as follows:

\*     \*     \*

3. **[Husband]'s Child Support Obligation.**  The parties

agree that [Husband] shall pay [Wife] child support in the amount of $2,300.00 per month payable in biweekly installments of $1,061.54. The parties further agree that [Husband] shall continue to pay this sum to [Wife] until the parties' youngest child graduates from high school or turns eighteen (18) years of age, whichever event shall occur last except as otherwise set forth below.

4. **Post-Secondary Education.** As each child reaches age eighteen (18) or graduates from high school, whichever event occurs last for each child, the amount of child support payable to [Wife] shall be reduced by 1/3 (one-third) or $767.00 per month. As each child reaches age eighteen (18) or graduates from high school, [Husband] shall deposit the amount of $767.00 into an account with the appropriate child's name on the account for the child's sole and exclusive use and benefit.

5. **Termination.** [Husband]'s obligation to pay child support to [Wife] shall terminate in its entirety when the youngest child turns eighteen (18) or graduates from high school, whichever event shall occur last.

\*    \*    \*

(Agreement for Order of Support, dated 3/25/09, at 2). The Domestic Relations Office entered a Final Order of Support on June 18, 2009, based on the terms of the 2009 Support Agreement, with certain conditions:

Other Conditions:

IT IS NOTED THAT THE PARTIES['] AGREEMENT CONTAINS PROVISIONS WHICH ARE NOT ENFORCEABLE THROUGH THIS OFFICE. THESE PROVISIONS ARE REGARDING PAYMENTS TO EMANCIPATED CHILDREN AND PAYMENT OF 30% OF [HUSBAND'S] GROSS BONUSES.

IT IS NOTED THAT [HUSBAND] SHALL CLAIM [B.P.] AS A DEPENDENT FOR TAX PURPOSES.

(*Id.* at 3).

- 2 -

During the divorce proceedings, the parties also entered into a Property Settlement Agreement ("PSA") and executed an Addendum to the PSA. The court entered a divorce decree on December 30, 2010, that incorporated without merging the PSA and Addendum to the PSA. Subsequently, the parties executed a Second Addendum to the PSA on June 1, 2011. The court entered an order on June 29, 2011, incorporating without merging the Second Addendum to the PSA into the divorce decree. The Second Addendum to the PSA provided, *inter alia*, Wife would receive a portion of Husband's distribution from his deferred compensation retirement plan, upon termination of his employment. Under the Second Addendum to the PSA, Wife was entitled to sixty-five (65%) of Husband's marital contributions to the plan, as of December 2011, in the amount of $94,246.02. Wife would also be entitled to sixty-five percent (65%) of the appreciation (or subject to depreciation) of Husband's marital contributions to the plan until termination of employment.

The parties' oldest child, B.P., graduated from high school in June 2011. In the fall of 2011, B.P. matriculated as a full-time student at a university for one school year. Wife made payments toward B.P.'s tuition. Husband failed to make monthly payments to B.P., in violation of the 2009 Support Agreement, until July 2012. Subsequently, Husband made payments to B.P. in amounts less than $767.00, until September 2014, when Husband suffered a stroke. Husband's stroke rendered him unable to

continue working.

On July 22, 2015, Wife filed a petition for special relief, contempt, and enforcement. In her petition, Wife requested the court, *inter alia*, to: (1) find Husband in contempt for failure to comply with the 2009 Support Agreement; (2) direct Husband to reimburse Wife for her payment of B.P.'s college tuition in the amount of $14,254.00 for 2011-2012; and (3) direct Husband to distribute to Wife her share of Husband's deferred compensation plan per the Second Addendum to the PSA.

The parties appeared before the court on November 19, 2015, and resolved on the record some other issues Wife had presented in her petition. On February 17, 2016, Wife filed a second petition for special relief, contempt, and enforcement, noting several of her complaints from her July 2015 petition remained outstanding. The court held hearings on March 22, 2016, and April 25, 2016; Husband's power of attorney testified and Wife testified.

The court granted Wife some relief on May 17, 2016. Regarding the post-separation growth of Husband's deferred compensation plan, the court found Wife was entitled to sixty-five percent (65%) of the post-separation growth of the plan or $90,671.81; but Wife had to reimburse Husband for ten percent (10%) of it, or $9,671.18, toward the federal taxes he paid on it. As a result, the court ordered Husband to pay Wife $81,604.63, as Wife's net share of the post-separation growth of Husband's marital contributions

to his deferred compensation plan. Regarding B.P.'s post-secondary education expenses, the court directed Husband to reimburse Wife $14,254.00 for the tuition she paid on behalf of B.P. for 2011-2012.

Husband filed a motion for reconsideration on May 27, 2016, which the court denied. Husband timely filed a notice of appeal on June 16, 2016. On July 12, 2016, the court ordered Husband to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Husband timely complied on August 1, 2016.

Husband raises three issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY ENFORCING THE MARCH 25, 2009 AGREEMENT FOR ORDER OF SUPPORT AS IT RELATES TO POST-SECONDARY EDUCATION, AS IT WAS A SUPPORT AGREEMENT WHICH WAS CONVERTED TO A SUPPORT ORDER AND AS SUCH IS NOT ENFORCEABLE UNDER PENNSYLVANIA LAW[?]
>
> WHETHER, IN THE ALTERNATIVE, IF SUCH AN AGREEMENT IS ENFORCEABLE, THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED AN ABUSE OF DISCRETION IN REACHING CONCLUSIONS THAT ARE NOT SUPPORTED BY THE RECORD AND WHICH DO NOT SUPPORT THE RELIEF GRANTED?
>
> WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CALCULATING FAIR AND EQUITABLE TAX CONSEQUENCES FOR WIFE FOR HER SHARE (65%) OF THE DISTRIBUTION FROM THE DEFERRED COMPENSATION PLAN WHERE THE SECOND [ADDENDUM TO THE PROPERTY SETTLEMENT AGREEMENT] FAILED TO ADDRESS TAX CONSEQUENCES BETWEEN THE PARTIES AND THE TRIAL COURT ESSENTIALLY AWARDED WIFE HER SHARE FROM GROSS DISTRIBUTION WITH NO TAX CONSEQUENCES?

(Husband's Brief at 4).

In his first issue, Husband argues the parties' 2009 Agreement for Order of Support at issue is basically unenforceable. Specifically, Husband claims the 2009 Support Agreement was a prelude to a Support Order and destined to become the Support Order, which functionally supplanted the 2009 Support Agreement. Husband accedes that the June 2009 Final Order of Support memorializes the 2009 Support Agreement. He complains, however, that the Final Order, by its own conditions, cannot be used to enforce those terms of the 2009 Support Agreement regarding payments to his emancipated children. Husband contends he contracted only for the **entry** of a Support Order and, once the order was entered consistent with the terms of the 2009 Support Agreement, the 2009 Support Agreement was complete and fulfilled. Husband further maintains the 2009 Support Agreement cannot be enforced separately because it was not a "post-nuptial" agreement that settled all of the parties' property matters and claims. Husband contends only a final agreement of that nature can bind a party to pay for a child's post-secondary education expenses, citing **Reif v. Reif**, 626 A.2d 169 (Pa.Super. 1993), and the 2009 Support Agreement at issue here is not a final "post-nuptial" agreement. Husband concludes this Court should vacate the trial court's order because the 2009 Support Agreement is unenforceable and no longer binding. We disagree.

"Pennsylvania law permits support orders and private agreements for support to coexist and be enforced separately. Private support agreements are subject to contract principles and enforceable in an action at law for damages or in equity for specific performance." **Nicholson v. Combs**, 550 Pa. 23, 42, 703 A.2d 407, 417 (1997); **Sams v. Sams**, 808 A.2d 206, 211 (Pa.Super. 2002). The action at law for damages might include the unpaid amount of support plus interest, whereas relief in equity for specific performance seeks an order directing the payor to comply with his support obligations under the agreement. **Id.** A civil contempt complaint is an appropriate mechanism to enforce a child support agreement. 23 Pa.C.S.A. § 3105 (stating: "A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement"); **Love v. Love**, 33 A.3d 1268 (Pa.Super. 2011). "The powers of a domestic relations judge are plenary and the function is that of a law judge or equity chancellor as the case demands." **Horowitz v. Horowitz**, 600 A.2d 982, 984 n.1 (Pa.Super. 1991).

Nothing in Pennsylvania law requires parents to support their children beyond the age of majority. **Blue v. Blue**, 532 Pa. 521, 529, 616 A.2d 628, 633 (1992) (stating: "[N]otwithstanding a child reaching majority at age 18,

a parental duty of support is owed until a child reaches 18 or graduates from high school, whichever event occurs later"). Likewise, nothing in Pennsylvania law prohibits parents from agreeing to pay the educational expenses of their non-minor children; in that context, the obligation is contractual. *W.A.M. v. S.P.C.*, 95 A.3d 349, 352-53 (Pa.Super. 2014) (providing party can contractually assume duty to support child's post-secondary education).

> [A] party may contractually assume a duty to support his…child's post-secondary education. This is so, despite *Blue*'s holding that there is no legal duty to provide post-secondary educational support. Since Father's support obligation in this case is defined in the post-nuptial agreement, his duty is contractual, not legal. We must apply the law of contracts to interpret father's duty and, of course, the intent of the parties will control.

*Reif, supra* at 173 (internal citations omitted).

The language of a contract "should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Hart v. Arnold*, 884 A.2d 316, 333 (Pa.Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006). "When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Chen v. Chen*, 586 Pa. 297, 307, 893 A.2d 87, 93 (2006). "If left undefined, the words of a contract are to be given their ordinary meaning." *Kripp v. Kripp*, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced." *Murphy v. Duquesne*

*University Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001). "The meaning of an unambiguous written instrument presents a question of law for resolution by the court." *Id.* In that context,

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa.Super. 2007) (quoting *Stamerro v. Stamerro*, 889 A.2d 1251, 1257-58 (Pa.Super. 2005) (some internal citations omitted).

Instantly, the parties executed the 2009 Support Agreement at issue on March 25, 2009. The Domestic Relations Office entered a Final Order on June 18, 2009, based on the terms of the parties' 2009 Support Agreement. The parties entered into the 2009 Support Agreement with the intent that the court would subsequently enter a support order, but the entry of the support order did not automatically render the 2009 Support Agreement unenforceable. *See Sams, supra*. Husband's reliance on *Reif, supra* is misplaced. Nothing in *Reif* holds that a parent's obligation to pay for post-secondary education expenses is enforceable only if that obligation arises from a "post-nuptial" agreement which settles all of the parties' claims. *See id.* Instead, *Reif* stands only for the general proposition that a parent's duty to support post-secondary education expenses can arise from a

contract, even if it does not arise under law. ***Id.*** at 173 (stating: "Since Father's support obligation in this case is defined in the post-nuptial agreement, his duty is contractual, not legal"). Therefore, even if the parties' 2009 Support Agreement is not a "post-nuptial" agreement, as defined by Husband, which settled all of the parties' claims, it is nonetheless a contract obligation sufficient to require Husband to provide B.P. with post-secondary education support. ***Id.*** Similarly, we reject Husband's suggestion that the 2009 Support Agreement was just a prologue to a support order, where neither the law nor the record validates that interpretation. Thus, the post-secondary education support provision in the parties' 2009 Support Agreement prevails, and Husband's first issue merits no relief.

In his second issue, Husband avers that even if the 2009 Support Agreement is enforceable, it did not require Husband to pay post-secondary education tuition for B.P. Husband maintains the 2009 Support Agreement only obligated him to deposit into B.P.'s account funds for B.P.'s exclusive use and benefit, not necessarily for B.P.'s tuition. Husband posits the 2009 Support Agreement required him to pay post-secondary education expenses of $767.00 per month, or $9,204.00 for the year B.P. attended college. Husband concludes the trial court erred when it directed Husband to reimburse Wife for missed tuition payments in the amount of $14,254.00. We agree in part.

Instantly, regarding Husband's obligation to pay for B.P.'s post-

secondary education expenses, the trial court reasoned as follows:

> [Husband] entered into [the 2009 Support Agreement] with Wife to pay post-secondary education expenses for [B.P.]. The [Support] Agreement is clear and unambiguous, and therefore, the [c]ourt need not look beyond the written agreement. [Husband] has breached his obligation to pay the support for post-secondary education to [B.P.], as bargained for by [Husband] and [Wife]. [Wife] has the ability to enforce the obligation, and recover the monies she paid for [B.P.]'s post-secondary education….

(Trial Court Opinion, filed August 19, 2016, at 3-4) (internal citations omitted). As to the amount Husband must reimburse Wife, the court determined Husband owed Wife $14,254.00, the amount Wife paid toward B.P.'s tuition. The record supports the court's rationale concerning: Husband's obligation to provide B.P. support for post-secondary education expenses; Husband's breach of that obligation; and Wife's right to enforce the 2009 Support Agreement and recover from Husband some of what she paid toward B.P.'s tuition. The record, however, does not support the court's determination of the amount Husband must reimburse Wife under the 2009 Support Agreement.

The 2009 Support Agreement provides in part:

> 4. **Post-Secondary Education.** As each child reaches age eighteen (18) or graduates from high school, whichever event occurs last for each child, the amount of child support payable to [Wife] shall be reduced by 1/3 (one-third) or $767.00 per month. As each child reaches age eighteen (18) or graduates from high school, [Husband] shall deposit the amount of $767.00 into an account with the appropriate child's name on the account for the child's sole and exclusive use and benefit.

- 11 -

(Agreement for Order of Support, dated 3/25/09, at 2). The record indicates B.P. incurred college tuition expenses for the 2011-2012 academic year, beginning in July 2011. The 2009 Support Agreement obligated Husband to contribute $767.00 per month for each month B.P. was engaged in post-secondary education. Thus, the maximum amount Husband had to contribute toward B.P.'s college expenses was $9,204.00 ($767.00 per month for 12 months). Therefore, the trial court erred when it ordered Husband to reimburse Wife in the amount of $14,254.00. *See Kraisinger, supra*.

Additionally, Wife alleged in her enforcement petition that Husband failed to make any payments to B.P. until June 2012, but Wife's testimony indicated Husband might have made some payments to B.P. during the 2011-2012 academic year. (*See* N.T. Hearing, 4/25/16, at 20.) The record, however, does not disclose what amount, if any, Husband paid toward B.P.'s post-secondary expenses in 2011-2012. Accordingly, we vacate the trial court's order to the extent it directs Husband to reimburse Wife in the amount of $14,254.00 for B.P.'s tuition, and remand for the court to fix the amount Husband actually failed to contribute to B.P.'s post-secondary education expenses in 2011-2012, not to exceed $9,204.00.

In his third issue, Husband argues that, when the parties executed the Second Addendum to their PSA, they mistakenly believed they could separate the deferred compensation plan into two distinct funds. Husband

avers the parties' interests could be divided instead only upon distribution to Husband. Husband insists the parties suffered a mutual mistake as to how the deferred compensation funds could be allocated and distributed. Under contract principles, Husband contends the court could rescind or reform the Second Addendum to the PSA. Husband points out that the Second Addendum to the PSA did not expressly state how the parties would bear the tax consequences which arose upon distribution of Husband's deferred compensation plan. Husband claims he paid all of the taxes on the entire distribution, including Wife's share. Husband complains the court erred in attributing Wife's share of the taxes at the lowest tax rate of 10%, for a single person under the IRS tax tables of 2015, when her actual tax rate should be higher and could be as high as 28%. Husband submits the parties presented no evidence regarding Wife's federal income tax rate. Instead, Husband avers the court allowed Wife to take 65% of Husband's deferred compensation distribution with only a limited tax liability of 10%, which is inequitable, erroneous, and represents a windfall to Wife. Husband concludes we should vacate and remand for further proceedings to calculate the proper tax liability for each party. For the following reasons, we cannot agree.

As a preliminary matter, we must decide if Husband properly preserved his third issue for appellate review. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa.Super. 2007), *aff'd*, 602 Pa. 147, 977 A.2d 1170

(2009) (stating appellate court may raise issue of waiver *sua sponte*). The appellant has the responsibility to provide a complete record for review. ***Conner v. DaimlerChrysler Corp.***, 820 A.2d 1266, 1273 (Pa.Super. 2003). This Court is limited to considering only those materials which have been certified in the record on appeal. Pa.R.A.P. 1921. ***See also Everett Cash Mut. Ins. Co. v. T.H.E. Ins. Co.***, 804 A.2d 31, 34 (Pa.Super. 2002) (stating: "[T]hose documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent"). In other words, if a claim depends on materials which are not in the certified record, the claim is waived. ***Stewart v. Owens-Corning Fiberglas***, 806 A.2d 34, 37 n.3 (Pa.Super. 2002) (stating: "The failure of the appellant to ensure that the original record certified for appeal contains sufficient information to conduct a proper review may constitute a waiver of the issues sought to be examined"). "When the appellant has failed to preserve issues for appeal, the issues are waived, and the…court's order is more properly 'affirmed.'" ***In re K.L.S.***, 594 Pa. 194, 197 n.3, 934 A.2d 1244, 1246 n.3 (2007) (noting when appellant has waived issues on appeal, appellate court should affirm trial court's decision, not quash appeal).

Instantly, Husband failed to ensure we had a complete record necessary for appellate review. To begin, the certified record does not contain the following: the PSA; the Addendum to the PSA; the divorce decree; the Second Addendum to the PSA; the order incorporating the

Second Addendum to the PSA into the divorce decree; statements reflecting Husband's contributions to the deferred compensation plan; Husband's 2015 tax returns; and Wife's 2015 tax returns. Absent these documents, we cannot conduct meaningful appellate review of Husband's tax issue which, as presented, remains theoretical and speculative.[1] If these documents were not even offered to the trial court, (which would explain why they are also missing from the record), how can we fault the court's discretionary decision to assess Wife with a tax liability of 10%, applied only to the growth portion of the deferred compensation plan? Therefore, we deem Husband's third issue waived. *See Conner, supra*; *Stewart, supra*.

Order affirmed in part and reversed in part; case remanded with specific instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2017

---

[1] *See, e.g., Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990) (stating: "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains").